Ken **JORGENSEN**, Appellant,

v.

**MODERN WOODMEN OF AMERICA**, Appellee.

Ken **JORGENSEN**, Appellee,

v.

**MODERN WOODMEN OF AMERICA**, Appellant.

Nos. 84–1818, 84–1843.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 30, 1985.

Decided May 9, 1985.

Mark L. Laughlin, Omaha, Neb., for appellant.

C.L. Robinson, Omaha, Neb., for appellee.

Before LAY, Chief Judge, and FAGG and BOWMAN, Circuit Judges.

FAGG, Circuit Judge.

Modern Woodmen of America (Modern Woodmen or Company) appeals from the district court's determination that it discriminated against a former employee, Ken Jorgensen, on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* We reverse.

Modern Woodmen sells insurance throughout the United States and has divided the nation into a number of separate geographic sales territories. Each territory is assigned to an "agency manager" who is responsible for recruiting and training insurance agents throughout that territory. Between 1964 and 1980, Ken Jorgensen served as an agency manager for a territory that encompassed parts of South Dakota, Nebraska, and Iowa.

For a number of years prior to this action, Modern Woodmen had regularly undertaken to reduce the size of its larger territories. These reductions were undertaken for two basic reasons relevant to this action. First, by reducing the size of the territory, travel and other business-related expenses of the territory's agency manager were substantially reduced. Second, and more important, the Company found that with smaller territories each agency manager was better able to concentrate his or

her full effort on the recruitment and training of insurance agents. Over the long term, it was anticipated that this practice would result both in more economically efficient insurance territories and eventually in greater overall earnings for the Company.

In approximately 1976, Modern Woodmen began to discuss the possibility of splitting Jorgensen's territory. Jorgensen was made fully aware of the Company's intentions and, in fact, participated actively in all stages of the plan's development. After determining that Jorgensen's territory would be split, it was decided that the actual split would not occur until November of 1980 when Jorgensen was scheduled to retire. However, in anticipation of this eventual split, Vern Smith, an agency manager in Illinois, was relocated to South Dakota where he was to serve as a supervisor under Jorgensen until the split actually occurred. These arrangements were agreeable to Jorgensen and were undertaken with his blessing.

In 1979, long after the plan to split Jorgensen's territory had been agreed upon and partially undertaken, Jorgensen informed the Company that he would not retire in 1980 at the age of sixty-five, but rather would continue working until the age of seventy. This change was precipitated by an amendment to the ADEA that enlarged the federally protected age group from sixty-five to seventy. *See* 29 U.S.C. § 631(a). After Modern Woodmen was notified of Jorgensen's intent, it acknowledged his right to continue working and apparently encouraged him to continue working since he had been a valued and productive employee for many years.

After Jorgensen's announcement, Modern Woodmen concluded that there was no longer any reason to delay the final split of Jorgensen's territory. Further, by the time Jorgensen made his plans known, the working relationship between himself and Vern Smith had deteriorated seriously and was adversely affecting the productivity of the territory in which they were working. Consequently, in January of 1980, Modern Woodmen went ahead with its planned split and assigned the agreed upon portion of Jorgensen's territory to Vern Smith. Jorgensen then became agency manager over the remaining portion of his former territory.

Following this split, Jorgensen's work began to deteriorate seriously. By 1982, he had virtually stopped working and was making little or no effort to recruit and train insurance agents. In fact, the record indicates that by this time, Jorgensen was working only one hour per day. In February of 1982, Modern Woodmen was left with no choice but to terminate Jorgensen.

Subsequently, Jorgensen filed this age discrimination action in the district court. Jorgensen did not challenge the final termination of 1982. Instead, Jorgensen argued that the reduction of his territory was done with the intent of forcing him to retire and as such violated the ADEA. The district court accepted Jorgensen's position and found both that the Company's asserted reasons for the split were pretextual and that Jorgensen's age had been a determining factor in its decision to split his territory. We disagree.

■ To recover for age discrimination, the plaintiff has the initial burden of establishing a prima facie case of age discrimination. Once such a showing has been made, the burden of production shifts to the employer to produce evidence showing that the actions were taken for legitimate, nondiscriminatory reasons. If the employer makes such a showing, the ultimate burden of persuasion lies with the plaintiff to show that age was a determining factor in the actions taken by the employer. *Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 959–60 (8th Cir.1978); *see also Blim v. Western Electric Co.*, 731 F.2d 1473, 1477 (10th Cir.1984). In carrying this ultimate burden of persuasion, the plaintiff can "prove his case by showing either direct evidence of discrimination or evidence that the reasons given for the adverse action are a pretext to cloak the discriminatory motive." *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 377 (8th Cir.1983) (citing *Texas Department of*

*Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) ).

■ In the present action, because the case was fully tried, we focus our inquiry on the ultimate question presented in an age discrimination case: Were the actions undertaken by the defendant discriminatory or not? *See United States Postal Service v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). As stated, the district court found that Modern Woodmen's actions were discriminatory. This finding is one of fact, and we may reverse this finding only if we conclude that it is clearly erroneous. *Pullman-Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* — U.S. ——, ——, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) ); *see also Danzl v. North St. Paul-Maplewood-Oakwood Independent School,* 706 F.2d 813, 816 (8th Cir.1983). Despite this stringent standard, after carefully examining the record as a whole, we are left with the definite and firm conviction that Jorgensen failed to establish any discrimination on the part of Modern Woodmen. Accordingly, we conclude that the district court's finding of age discrimination is clearly erroneous.

■ Modern Woodmen's policy of reducing the size of certain territories is well established and longstanding. In support of its policy, Modern Woodmen asserts that by reducing the size of individual territories (including Jorgensen's), the overall efficiency and productivity of the Company and its insurance territories are increased. These are clearly legitimate business reasons, and Jorgensen has presented no evidence suggesting that these reasons, in general and as they relate to this particular lawsuit, are pretextual or mask some discriminatory motive on the part of the Company. Whether or not the Company's decision to split Jorgensen's or any particular territory is itself a sound business decision is irrelevant to our inquiry. The ADEA is not intended to be used as a means of reviewing the propriety of a business decision on the part of Modern Woodmen. *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980).

Additionally, in the present action, the plan to split Jorgensen's territory had been agreed upon for a number of years, and Jorgensen himself had actively participated in its development and partial implementation. Out of deference to Jorgensen, and not out of any legal or contractual obligation, the Company agreed to delay the final split until 1980. Once Jorgensen decided not to retire, the only reason for not implementing the Company's longstanding business decision ceased to exist. It is understandable that the Company would seek to implement this long planned business decision rather than delay its implementation for an additional five years, particularly in light of the fact that by the time of the split, the working relationship between Smith and Jorgensen had so deteriorated that it was adversely affecting the productivity of the territory in which they were working.

Jorgensen raises several other contentions, including claims of harassment and constructive discharge. We have examined these issues and conclude that they are without merit. Because we find that Jorgensen has failed to establish a discriminatory motive on the part of Modern Woodmen, we conclude that the district court must be reversed.

Reversed.