Charles H. BETHEA, Appellee,

v.

LEVI STRAUSS & CO., Appellant.

No. 86–2217.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1987.
Decided Aug. 27, 1987.
Rehearings and Rehearings En Banc Denied Nov. 13, 1987.

Thomas Walsh, St. Louis, Mo., for appellant.

Dale C. Doerhoff, Jefferson City, Mo., for appellee.

Before ROSS, Circuit Judge,[*] FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Levi Strauss & Co. (Levi) appeals from the district court's judgment entered for Charles Bethea on a jury verdict of breach of contract and of willful discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. Levi also appeals from the order of the district court denying its motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial. Levi argues that (1) Bethea failed to make a submissible case of age discrimination; (2) there was no evidence to support a finding of willfulness that would entitle Bethea to double damages under the ADEA; and (3) Bethea's contract claim was insufficient as a matter of law. We affirm in part and reverse in part.

**Facts**

Charles Bethea began working for Levi in 1974 in the Arkansas employee purchase plan distribution center. He became a sales representative in 1977. Bethea's accounts during the relevant time period were mostly smaller stores in outlying areas of Missouri and in southern Illinois.

In 1984 Levi decided to restructure its sales force to counter slipping sales and reduced profits in a time of depressed market conditions and increased competition. Bethea, age 56, was one of five salesmen in the Missouri-southern Illinois territory in 1984. He, Richard Tolan, age 55, and Paul Caracker, age 29, were preliminarily selected by the national sales managers as the three salesmen in that territory to be laid off. After these preliminary selections

---

* The Honorable Donald R. Ross was an active judge of the Eighth Circuit Court of Appeals on the date this case was submitted, but took senior status on June 13, 1987, before the opinion was filed.

were made, Levi utilized an employee evaluation procedure called an objective job quotient (OJQ). The OJQ consisted of a series of comparative ratings of the womenswear sales representatives in which each sales representative was ranked in comparison to the others in various categories.[1] The ratings were done by supervisors and coworkers. Levi felt the OJQ confirmed the previous subjective judgments. Bethea was laid off in August 1984, and was given severance pay of $23,808, plus an additional $4,762 in lieu of thirty days' notice. The territory was divided between the two retained salesmen, John Mason, age 30, and Maurice Rosga, age 36.

Bethea filed suit alleging age discrimination and breach of employment contract. The jury returned a verdict for Bethea for $82,000 on the age discrimination claim. The jury also found that Levi's violation of the ADEA was willful, and the trial court accordingly assessed an additional $82,000 for liquidated damages pursuant to 29 U.S.C. § 626(b). On the contract claim, the jury found that Bethea had been damaged in the amount of $500,000. The court ruled that the actual damages on both counts overlapped and thus entered judgment for $500,000 actual damages, $82,000 in liquidated damages, and $9,868.74 for attorney fees and expenses.

## Discussion

### ADEA Claim

Levi first argues that Bethea failed to make a submissible case of age discrimination. In addition Levi contends that it articulated a legitimate nondiscriminatory reason for Bethea's layoff—a reduction in force mandated by adverse economic and competitive conditions. Thus Levi argues the district court erred in not granting its motions for a directed verdict and for judgment notwithstanding the verdict.

The ADEA proscribes discrimination against any individual who is "at least 40 years of age but less than 70 years of age", 29 U.S.C. § 631(a), with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). *Dreyer v. Arco Chemical Co.,* 801 F.2d 651, 653 (3d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). To recover in an action brought under the ADEA, the plaintiff has the burden of establishing a prima facie case of age discrimination. *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 135 (8th Cir.1985); *Jorgensen v. Modern Woodmen of America,* 761 F.2d 502, 504 (8th Cir.1985). Once such a showing has been made, the burden of production shifts to the employer to produce evidence showing that its actions were taken for legitimate, nondiscriminatory reasons. *Gilkerson, supra,* 770 F.2d at 135; *Jorgensen, supra,* 761 F.2d at 504. If the employer makes such a showing, the ultimate burden that a plaintiff must meet is to show that age was a determining factor in the actions taken by the employer. *Gilkerson, supra,* 770 F.2d at 135; *Jorgensen, supra,* 761 F.2d at 504; *Cleverly v. Western Elec. Co.,* 594 F.2d 638, 641 (8th Cir.1979); *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958, 960 (8th Cir.1978).

As the Supreme Court has said, the "ultimate factual issue" in cases such as this is whether the employer intentionally discriminated against the employee. *United States Postal Service v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403; *Gilkerson, supra,* 770 F.2d at 135; *Jorgensen, supra,* 761 F.2d at 505. On appeal, "because the case was fully tried on the merits, we focus our attention on the ultimate question presented and not on the adequacy of a party's showing at any particular stage of the analysis set down in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) as applied in an age discrimination case." *Gilkerson, supra,* 770 F.2d at 135. "[O]nce a finding of discrimination *vel non* has been made, and

---

1. These categories were: (1) planning and organization, (2) problem analysis and resolution, (3) communication, (4) technical/professional knowledge, (5) interpersonal work relationships, (6) selling skills and merchandise presentation, (7) record keeping and administrative followup, (8) account servicing and customer relations, and (9) leadership.

the resulting judgment is being evaluated on appeal, [the] presumptions [described in *McDonnell Douglas*] fade away, and the appellate court should simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial. This is the teaching of *Aikens.*" *Barber v. American Airlines, Inc.*, 791 F.2d 658, 660 (8th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).

■ Levi offered evidence of a legitimate nondiscriminatory reason for discharging Bethea, in claiming that the reduction in force was necessary and that Bethea did not have major metropolitan accounts, the focus of the reorganized marketing structure. Simply because Levi articulated a legitimate nondiscriminatory reason for firing Bethea does not, however, entitle it to a verdict in its favor or a judgment notwithstanding the verdict. *Gilkerson, supra*, 770 F.2d at 135. For an order entering judgment notwithstanding the verdict to be proper, "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position" of Bethea. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir.1985) (quoting *Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984); *Gilkerson, supra*, 770 F.2d at 136; *Brown v. Syntex Laboratories, Inc.*, 755 F.2d 668, 671 (8th Cir.1985). In its consideration of all the evidence the jury could still find that Bethea's evidence established that the reasons articulated were pretextual. *See Gilkerson, supra*, 770 F.2d at 135–36. Based upon the verdict for Bethea, we believe that the jury adopted his version of the case and considered the reasons proffered by Levi to be pretextual and Levi's actions to be discriminatory.

■ We have carefully reviewed the record before us and conclude that, while this is a close case, there was sufficient evidence to support the jury's verdict on the age discrimination claim. In reviewing the district court's denial of Levi's motion for judgment notwithstanding the verdict, the standard to be applied by the district court and by this court is the same. *Chap-*

*pell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987); *Cleverly, supra*, 594 F.2d at 641. In either case, the evidence must be considered in the light most favorable to Bethea, as the party who prevailed with the jury. *Gilkerson, supra*, 770 F.2d at 136; *Cleverly, supra*, 594 F.2d at 641. All conflicts in the evidence must be resolved in a manner which favors the jury's verdict, and all facts which Bethea's evidence tends to prove must be assumed to have been proven. *Gilkerson, supra*, 770 F.2d at 136; *Cleverly, supra*, 594 F.2d at 641. Bethea must be given the benefit of all favorable inferences which may reasonably be drawn from the facts proved. *Gilkerson, supra*, 770 F.2d at 136; *Cleverly, supra*, 594 F.2d at 641. The motion denying judgment n.o.v. must be affirmed if, reviewing the evidence in this light, reasonable persons could differ as to the conclusions to be drawn from it. *Gilkerson, supra*, 770 F.2d at 136; *Cleverly, supra*, 594 F.2d at 641.

Reviewing Bethea's evidence in light of the above, we cannot say that no reasonable trier of fact could have found in favor of Bethea. The jury had before it evidence that 1) he received a number of awards and recognitions including a double commission in February 1983 for exceeding his sales targets; 2) he received a letter of commendation from his regional manager in January 1984; 3) he received a distinguished service award at a national sales meeting in March 1984; 4) subjective decisions about Bethea's termination were made before the OJQ results were available. The jury could have reasonably believed that age was a determining factor in Levi's decision to discharge Bethea. We think the district court properly denied Levi's motion for judgment notwithstanding the verdict, or alternatively, a new trial.

**Willfulness Claim**

Next, Levi challenges the jury's award of liquidated damages. Under the ADEA, liquidated damages are permitted only in cases of "willful violations." 29 U.S.C. § 626(b). It is now established that a violation is "willful" if "the employer either

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128–29, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985) (quoting the trial court in *Air Line Pilots Ass'n v. Trans World Airlines, Inc.*, 713 F.2d 940, 956 (2d Cir.1983)). Levi argues that there is no evidence in the record of any such reckless disregard of the law, and that its conduct cannot reasonably be held to meet the *Thurston* test for willfulness. Bethea takes the position that the jury could reasonably believe that Levi was in willful violation of the ADEA because there was evidence that the company was motivated by a desire to retain sales persons who had the potential for "long-term relationships" with its customers (only younger sales persons could meet this criterion), Levi made its decision to terminate Bethea before it completed its OJQ, and Levi failed to follow its own layoff policy. We disagree.

■ "Because *Thurston* makes clear that we must interpret the liquidated damages provisions in a way that would not permit 'an award of double damages in almost every case', *Thurston, [supra,* 469 U.S. at 128, 105 S.Ct. at 625], we must seek a standard for willfulness that distinguishes between a violation, which is almost always intentional, and a willful violation, leading to double damages." *Dreyer, supra,* 801 F.2d at 657. The *Thurston* Court looked to the legislative history of the ADEA which indicated that "Congress intended for liquidated damages to be punitive in nature." *Thurston, supra,* 469 U.S.

125, 105 S.Ct. at 624. In its analysis of the *Thurston* standard of willfulness, one court concluded that "[t]he essence of punitive damages is that they may be awarded 'for conduct that is *outrageous.*'" *Dreyer, supra,* 801 F.2d at 657 (citation omitted). Thus, in order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's "reckless disregard." *Thurston, supra,* 469 U.S. at 128, 105 S.Ct. at 625.

In our opinion willfulness was not established according to the *Thurston* standard. The evidence presented by Bethea does not establish more than a violation of the ADEA. We hold as a matter of law that Levi's violation of the ADEA was not willful within the meaning of 29 U.S.C. § 626(b) and that the district court erred in not granting Levi a judgment notwithstanding the verdict on the claim for liquidated damages.

**Breach of Contract Claim**

Levi argues that Bethea had no contractual rights arising from the layoff guidelines [2] in an internal personnel manual. Levi avers that in Missouri an agreement for employment is terminable at will unless a term is specified in the agreement. Bethea contends he was not an employee at will. He maintains that he had a contractual right, based on the layoff guidelines, not to be laid off except in conformity with those guidelines.

■ The rule in Missouri is well established that in the absence of a contract for

2. Levi's layoff policy reads in pertinent part:
OBJECTIVE
To provide criteria for laying off employees due to a reduction in work force caused by job elimination, department reorganization or redistribution of job responsibilities. * * *
POLICY:
LAYOFF A. Layoff is a reduction in work force due to job elimination, department reorganization or redistribution of job responsibilities.
B. Before the layoff of an employee, the releasing manager/executive, in conjunction with Personnel, will consider the following factors:

1. The employee's expertise necessary for the new organization will be evaluated in cases involving reorganization.
2. The employee's overall effectiveness will be assessed.
3. The employee's length and quality of service.
4. The affirmative action goals for the division/department.
C. Employees in the Employment Evaluation Period (usually the first three months of employment) may be laid off before any other employees.
LAYOFF NOTICE A. A minimum of two (2) weeks notice or pay in lieu of notice should be given to all laid off employees.

a definite term or a contrary statutory provision, an employer may terminate an employee at any time. *Tippit v. Jepco, Inc.,* 726 S.W.2d 877, 878 (Mo.App.1987); *Dake v. Tuell,* 687 S.W.2d 191, 193 (Mo. banc 1985); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 870–71 (Mo.App.1985); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 150 (Mo.App.1983); *Eib v. Federal Reserve Bank,* 633 S.W.2d 432, 435 (Mo.App.1982). There was no evidence presented of an employment contract for a definite term or of a contrary statutory provision. Although the jury found that Levi had failed to follow the layoff guidelines, the existence of layoff criteria did not change his status as an employee at will.[3] A contract without a definite term of employment is terminable at any time and under Missouri law there exists no liability for breach of contract. *Arie, supra,* 648 S.W.2d at 150 (citing *Amaan v. City of Eureka,* 615 S.W.2d 414, 415 (Mo. banc), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981); *Howe v. St. Louis Union Trust Co.,* 392 S.W.2d 625, 627 (Mo.1965); *Morsinkhoff v. De Luxe Laundry & Dry Cleaning Co.,* 344 S.W.2d 639, 642 (Mo. App.1961). Accordingly, we reverse the district court's judgment awarding Bethea damages on the breach of contract claim.

In sum, we affirm the district court's judgment awarding Bethea actual damages and attorney's fees on the age discrimination claim, reverse the district court's judgment awarding Bethea liquidated damages, and also reverse the district court's judgment awarding Bethea damages on the breach of contract claim.

---

**3.** Two Missouri cases have found contractual rights in similar situations: *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983) (where the employee was given a handbook containing employer's policy statements and rules of employment); and *Enyeart v. Shelter Mut. Ins. Co.,* 693 S.W.2d 120 (Mo.App.1985) (where employer published its employment policies in a document distributed to employees). Both of these cases can be distinguished from the facts here. Where the Missouri courts found contractual rights, the employer had distributed policy documents to the employee. Here, Levi's layoff guidelines were not distributed to employees; Bethea testified that he saw the guidelines for the first time the month prior to trial.

The district court incorrectly instructed the jury that the verdict must be for plaintiff (Bethea) if they found that (1) defendant (Levi) failed to use the layoff guidelines, (2) because of such failure defendant's contractual obligations were not performed, and (3) plaintiff was damaged.