Richard E. TOLAN, Appellee,

v.

LEVI STRAUSS & CO., Appellant.

No. 88–1018.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 22, 1988.

Decided Feb. 7, 1989.

Rehearing and Rehearing En Banc Denied March 28, 1989.

Dennis C. Donnelly, St. Louis, Mo., for appellant.

Michael Waxenberg, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

A jury found Levi Strauss & Co. (Levi) willfully discriminated against Richard Tolan because Levi fired Tolan based on his age. *See* Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982). The jury also found Levi breached its implied covenant of good faith and fair dealing under California state law. The district court denied Levi's motion for judgment notwithstanding the verdict and for a new trial. Levi now appeals to this court, and we affirm.

Tolan worked in the apparel industry for over thirty years. In 1980, Tolan joined Levi as a salesperson in the womenswear division. The company marketed young women's blouses and shirts (tops) as well as pants and jeans (bottoms) in that division. Tolan sold tops. Levi placed Tolan in a sales territory that included Missouri and parts of Illinois. Five Levi salespeople, including Tolan, serviced this territory.

In 1984, Levi reduced its sales force and, thus, discharged three of the five men working in Tolan's territory: Tolan, almost fifty-six years old, Charles Bethea, fifty-six years old, and Paul Caracker, twenty-nine years old. Levi retained Maurice Rosaga, thirty-six years old, and John Mason, thirty years old, as salespeople in the territory. Gary Ireton, a national sales manager for Levi who was then thirty-four years old,

met with two other national sales managers to make Levi's termination decisions. After making these decisions, Levi conducted an employee evaluation procedure known as the objective job quotient (OJQ). Under the OJQ, certain Levi employees rated the salespeople based on established criteria. Levi claimed the OJQ supported its previous decisions to terminate Tolan and the other two men.

Tolan and Bethea filed separate suits against Levi. A jury found Levi terminated Bethea, a bottoms salesperson, because of his age in violation of the ADEA. The jury further found the violation was willful. We affirmed the jury's finding of age discrimination, but reversed the jury's finding of willfulness. *See Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 357–59 (8th Cir.1987). We now turn to address Levi's various challenges to the jury verdict for Tolan.

## I. ADEA Claim

### A. The Violation

The ADEA prohibits employers from discriminating against employees, who are at least forty years old, by discharging them because of their age. 29 U.S.C. §§ 623(a)(1), 631(a). The ultimate issue in an ADEA case is whether the complaining employee has shown that age was a determining factor in the employer's action. *See Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 357–58 (8th Cir.1987). Here, Levi argues Tolan failed to present sufficient evidence to submit his ADEA claim to the jury. Specifically, Levi contends Tolan failed to establish a prima facie case of age discrimination and, in any event, Levi articulated a legitimate, nondiscriminatory reason for discharging Tolan—a reduction in the work force for economic reasons. *See Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 135 (8th Cir.1985) (identifying the three-step sequence that is used at trial in an ADEA case for the order of proof). We find Levi's contentions unpersuasive.

On appeal from a finding of age discrimination, this court does not review the adequacy of the evidence presented by the parties at any given stage of the proceedings. Instead, we must review the record to determine whether the evidence supports the jury's ultimate finding of age discrimination. *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1057 (8th Cir. 1988). In doing so, we must consider the evidence in the light most favorable to upholding the jury verdict and give the prevailing party, here Tolan, the benefit of all inferences that reasonably may be drawn from the evidence. *Bethea*, 827 F.2d at 358. Under this standard of review, we believe the record contains sufficient evidence to support the jury's finding of age discrimination.

Levi terminated the two oldest salespeople in the territory—Tolan and Bethea. At trial, Levi claimed it had terminated Tolan because he sold tops and the new focus was on bottoms. Levi also indicated it had been concerned about Tolan's relationship with major accounts. Nevertheless, Levi acknowledged it had no basis for believing Tolan could not sell bottoms as successfully as he had sold tops. Tolan had often worked with Bethea, a bottoms salesperson, in calling on clients and, thus, was familiar with that line of clothing. Levi also conceded it had no reason to believe that Tolan had other than a positive relationship with his major accounts.

Tolan had more years experience in sales than the two younger salespeople who were retained. Further, while at Levi, Tolan's supervisors gave Tolan excellent ratings on his appraisals. Tolan also received numerous awards for his job performance. In fact, Levi gave Tolan a Distinguished Service Award just a few months before Levi terminated Tolan.

Although projections for 1984 showed national sales of Levi tops would fall, Levi increased Tolan's sales target by several percentage points. The record also shows Ireton had been concerned about the high cost of sales in the region that contained Tolan's territory. Ireton indicated that because of the "seniority" of employees, salaries were higher in this region than in other regions. Further, Levi made the decision to terminate Tolan before conducting the OJQ. Under these circumstances, the

jury could have viewed the OJQ process as a sham. From all the evidence in the record, the jury reasonably could have concluded that age was a determining factor in Levi's decision to fire Tolan. The district court properly denied Levi's motion for judgment notwithstanding the verdict, *see Bethea,* 827 F.2d at 358, or, in the alternative, a new trial, *see Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1409 (8th Cir.1987).

### B. Damages for the Violation

■ Levi challenges the jury's award of $142,500 in backpay and $17,650 in lost medical and life insurance benefits. We have carefully reviewed the record and conclude the evidence supports the jury's backpay award. With regard to the medical and life insurance award, Levi contends the jury improperly awarded Tolan damages approximately equal to the replacement cost of the insurance even though Tolan did not replace much of the coverage formerly provided by Levi. Levi argues that Tolan can recover only his actual expenditures for insurance coverage and medical costs.

At trial, Tolan testified he actually spent $7,236 on medical insurance and medical expenses during the period from his discharge to trial. Tolan further indicated the cost of replacing the life insurance benefits previously provided by Levi exceeded $12,000, but Tolan admitted he had not spent that amount on life insurance. The courts have differed on whether an employee should recover for lost insurance benefits when that employee did not obtain substitute coverage or incur any previously covered expenses. *Compare Fariss v. Lynchburg Foundry,* 769 F.2d 958, 964–66 (4th Cir.1985) (plaintiff, the wife of a deceased employee, can recover life insurance premiums that employer would have paid even though employee failed to obtain substitute coverage); *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1185–86 (6th Cir.1983) (employee entitled to receive lost health insurance benefits); *Foster v. Excelsior Springs City Hosp. & Convalescent Center,* 631 F.Supp. 174, 174–75 (W.D.Mo.1986) (plaintiff, the wife of a deceased employee, can recover proceeds of life insurance policy

even though employee obtained no substitute coverage); *Jacobson v. Pitman–Moore, Inc.,* 582 F.Supp. 169, 179 (D.Minn. 1984) (employee can recover lost insurance benefits even though no substitute coverage obtained) *with Kossman v. Calumet County,* 800 F.2d 697, 703–04 (7th Cir.1986) (employee can recover only those amounts expended for substitute coverage or for medical expenses previously covered under employer's insurance plan), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987), *overruled on other grounds, Coston v. Plitt Theatres, Inc.,* 860 F.2d 834, 835–36 (7th Cir.1988); *McKelvy v. Metal Container Corp.,* 674 F.Supp. 827, 832 (M.D.Fla.1987) (same), *aff'd in part on other grounds and vacated in part on other grounds,* 854 F.2d 448 (11th Cir. 1988). *Cf. Galindo v. Stoody Co.,* 793 F.2d 1502, 1517 & n. 15 (9th Cir.1986) (in unfair representation case, plaintiff can recover only amounts spent for substitute insurance coverage or for medical expenses previously covered under employer's insurance plan).

In the present case, however, we look no further than the relevant jury instruction. This instruction permitted the jury to include in the damage award any amount that Tolan "actually sustained for lost medical-dental insurance payments and lost group life insurance payments." Tolan failed to object to this instruction at trial; nor does he challenge the instruction on appeal. Thus, the instruction controls the resolution of this issue. *See Phenix Fed. Sav. & Loan Ass'n, F.A. v. Shearson Loeb Rhoades, Inc.,* 856 F.2d 1125, 1129–31 & n. 2 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989). The instruction limits Tolan's recovery to the amount he actually spent on medical and insurance expenses—$7,236. Accordingly, the district court must reduce the jury's award of $17,650 by $10,414.

### C. Willful Violation

Levi also maintains the record does not support the jury's finding that the discrimination was a willful violation of the ADEA. We disagree.

■ The ADEA provides for double damages when a violation of the Act is willful. *See* 29 U.S.C. § 626(b). Unlike the damages awarded for an intentional violation of the statute, damages for a willful violation are punitive in nature. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985); *Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 359 (8th Cir.1987). To establish a willful violation of the statute, the employee must show that " 'the employer either knew or showed reckless disregard for * * * whether its conduct was prohibited by the ADEA.' " *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625 (quoting *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 956 (2d Cir.1983)); *see id.* 469 U.S. at 129, 105 S.Ct. at 625; *Bethea*, 827 F.2d at 358–59.

■ The Supreme Court in *Thurston* addressed a challenge to an employer's company-wide policy, *see* 469 U.S. at 114–18, 105 S.Ct. at 618–20, and thus, *Thurston* was a disparate impact case. The present case, however, is a disparate treatment case because it involves an employer's action against an individual employee. The circuit courts have recognized the difficulty of applying the *Thurston* standard in disparate treatment cases. *See, e.g., Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 158 (6th Cir.1988); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1549 (10th Cir. 1988); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1099–1100 (11th Cir.1987); *Dreyer v. ARCO Chem. Co.*, 801 F.2d 651, 656–57 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). Nevertheless, in light of *Thurston*, the courts have followed "a two-tiered liability scheme," 469 U.S. at 128, 105 S.Ct. at 625, that distinguishes between an intentional violation and a willful violation, which triggers double damages, *see Bethea*, 827 F.2d at 359.

Under the *Thurston* standard, willfulness requires more than an employer's knowledge that the ADEA exists. *See* 469 U.S. at 127–28, 105 S.Ct. at 624–25; *Washburn*, 831 F.2d at 1410. Employers are required to post ADEA notices and, thus, are usually aware of the statute's existence. *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625. To establish that an employer knew it was violating the ADEA, an employee must show the employer's mental state at the time of the claimed violation. *See Overgard v. Cambridge Book Co.*, 858 F.2d 371, 377 (7th Cir.1988); *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1061 (8th Cir.1988) (need evidence that "suggests * * * [a] conscious intent to violate the law"). Evidence of concealment may show the employer knew its conduct violated the ADEA. *Cf. Overgard*, 858 F.2d at 378.

Here, the jury could have found Levi decided to terminate Tolan because of his age in 1983, but attempted to conceal that decision until the summer of 1984. The record contains an employee status and change form dated December 1983 that initially documents Levi's decision to terminate Tolan. Levi, however, generated an additional status form dated August 1984 to coincide with Levi's reduction of work force and announcement of Tolan's termination.

Further, the jury could have been persuaded that the OJQ evaluators for Tolan were unfairly stacked against him to ensure a low rating. Tolan's OJQ rating would thus support the prior decision to terminate Tolan because of his age. Most of the Levi officials on Tolan's OJQ committee knew little about Tolan. Yet, several of them knew the two younger salespeople who were retained and had met with them several times before the OJQ process. The jury could have reasonably concluded that Levi engaged in concealing the real reason it fired Tolan—his age—because Levi was aware it had violated the ADEA. Under these circumstances, we find the evidence sufficient to sustain the jury's finding of willfulness. *See Clements v. General Accident Ins. Co. of Am.*, 821 F.2d 489, 492 (8th Cir.1987).

## II. Claim for Breach of Implied Covenant

■ Levi next attacks Tolan's recovery on his state claim for breach of an implied

covenant of good faith and fair dealing. Under Missouri choice-of-law rules, the district court determined California, rather than Missouri, law applied to this claim. Thus, the district court submitted this claim to the jury on a contract theory based on California law. After the jury returned its verdict for Tolan, the court entered judgment for $20,000 as emotional distress damages sustained on this claim.

Levi first argues the district court committed error in determining which state's law should apply. We disagree. The district court properly applied the relevant choice-of-law principles and determined California law applied.

Levi next argues this cause of action arises exclusively in tort and, consequently, the one-year statute of limitations for torts applies to Tolan's claim. *See* Cal.Civ.Proc. Code § 340(3) (West Supp.1984). Because Tolan filed this action approximately thirteen months after his discharge, Levi argues Tolan's claim is time-barred. *See id.* Again, we disagree. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 700 & n. 42, 254 Cal.Rptr. 211, 239 & n. 42, 765 P.2d 373, 401 & n. 42 (1988) (holding that in the employment context, cause of action seeking tort remedies for breach of implied covenant is not permitted; recovery for breach of this covenant is limited to contract remedies). Under the California statute of limitations applicable to contracts, the claim is not time-barred. *See* Cal.Civ.Proc.Code § 337(1) (West 1982) (four-year statute of limitations for actions in contract).

Levi asserts several other challenges to the district court's application of California law. We have reviewed the record and conclude Levi's arguments are meritless. Finally, we note that on appeal Levi has failed to challenge the amount or type of damages awarded on this claim.

III. Evidentiary Challenges

Levi finally contends the district court committed error by excluding certain testimony and other evidence Levi sought to present at trial. After carefully consider-

ing Levi's contentions, we find the district court did not abuse its discretion.

AFFIRMED.