### William A. PRITCHETT, Plaintiff,

v.

### GREEN BAY FOOD COMPANY, a DIVISION OF DEAN FOODS COMPANY, Defendant.

No. LR–C–87–503.

United States District Court, E.D. Arkansas, W.D.

June 1, 1989.

Gene O'Daniel, Little Rock, Ark., for plaintiff.

John J. Murphy, Jr., Kovar, Nelson, Brittain & Sledz, Chicago, Ill., and James M. McHaney, Jr., Owens, McHaney & Calhoun, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff, William A. Pritchett, filed suit under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, alleging the defendant, Green Bay Food Company, A Division of Dean Foods Company ("Green Bay"), terminated him on the basis of his age. Trial to the Court was held on this matter, and post-trial briefs have been received.

Plaintiff was born on August 9, 1928. At the time of his termination, he was 58 years old. Plaintiff began working in the pickle industry in September of 1949 with Brown–Miller Pickle Company, where he attained the position of regional sales manager. He worked for Brown–Miller from September of 1949 until approximately

June 25, 1975, when he was hired by Atkins Pickle Company as vice-president of sales and director of marketing.

As part of his salary with Atkins Pickle Company, plaintiff received a company automobile; payment of dues in the Russellville Country Club; hospitalization and major medical plan; life insurance to $40,000.00 and a disability policy to cover $500.00 per month for life. He was also to receive an annual bonus based on sales. At the time of termination on February 27, 1987, plaintiff's salary, excluding benefits, was $48,048.00. Plaintiff's duties at this position included working with the general manager, handling all sales, determining marketing procedures, packaging program, and pricing.

Atkins Pickle Company was purchased by defendant Green Bay on or about February of 1984. Plaintiff's direct supervisor was Regional Marketing Vice–President Roy Stuckmeyer, whose birth date is June 11, 1935 and who assumed his duties at the Atkins plant in January 1985. Mr. Stuckmeyer's direct supervisor was Mr. Dennis Purcell, National Senior Vice–President, who is 48 years of age. At the time of plaintiff's discharge, Robert Antoine was defendant's president and was in his early 60's. Plaintiff was a Regional Sales Manager, responsible for a six-state area which included Arkansas, Texas, Oklahoma, Florida, Louisiana and New Mexico. Defendant sells its products (pickles and relishes) by arranging with food brokers in various cities; their job is to place defendant's products in the food warehouses and retail stores in that market area and to utilize the broker's best efforts to promote the sales of defendant's products. The sales manager, such as plaintiff, trains, evaluates and supervises the performance of the brokers and makes sales presentations to stores and retail store chains. Defendant holds its sales managers responsible for making sure that the local brokers represent defendant properly and try to sell defendant's products.

In order to induce a new account (such as a retailer) to begin carrying defendant's products, a sales manager puts together a sales program. This can include financial assistance from defendant to the store in the form of offering price reductions to enable the retailer to introduce defendant's products to the public at a reduced price, or reimbursing retailers for promotional advertisements and for redemption of newspaper coupons for introductory price reductions on defendant's products. Defendant must then maintain its products in a given retailer's stores for a substantial period of time in order to make back the monetary outlays already expended in acquiring the account.

If sufficient sales are not realized to enable the retailer to continue carrying defendant's products for over a year, defendant can fail to recoup its introductory monetary outlay and there will be a net loss on that particular account.

From time to time accounts are lost in the pickle business to competitors who undercut prices or who offer enhanced introductory sales promotions. An important way to minimize lost accounts is to have a close relationship with brokers and customers so that a manufacturer such as defendant is made aware of competitor's offers and can react to them before accounts are lost.

On January 15, 1986, plaintiff's performance was reviewed by Roy Stuckmeyer, at which time several items were discussed. With respect to salary, Mr. Stuckmeyer stated in the review that "Because of Bill's salary being much more than other regional managers within Green Bay Food Company, we informed him that he will not be getting a salary increase this year." In the documented review, it states that plaintiff was told to get more involved with the customers and to follow up more closely with new accounts. It also states that he was told that defendant cannot continue to pay large sums of upfront money and then get thrown out within a year. He was told he wasn't making enough personal contact with the customers, but was leaving that up to the brokers. Plaintiff doesn't recall any mention of lost sales.

On November 17, 1986 Dennis Purcell wrote a memorandum to Roy Stuckmeyer

inquiring about the lost account of Safeway–Oklahoma City. In the memo, Purcell states:

I believe Bill Pritchett mismanages his territory. This is probably the sixth or seventh time I have seen Bill offer big money to an account to get in, then within a year, we lose the business. This kind of thing has got to stop.

A November 21, 1986 memo was introduced wherein it was stated that Bill Pritchett was told of Purcell's concern. On February 2, 1987 Dennis Purcell wrote Stuckmeyer another memo regarding the lost Cullum account. He tells Stuckmeyer "One more such incident anywhere in his region and he will be gone." Plaintiff did not recall ever being told this.

At a company Christmas party in 1986, Don Slack, defendant's comptroller, said that the sales department had done an outstanding job in 1986, particularly plaintiff. However, Slack was not involved with the Sales Department. In January of 1987, Roy Stuckmeyer indicated to the plaintiff they were upset with the accounts lost and that plaintiff should prepare a report showing the accounts plaintiff had acquired and lost. Plaintiff prepared it and gave it to Stuckmeyer.

In a memo dated February 6, 1987 to Dennis Purcell, Roy Stuckmeyer stated that he told plaintiff his job was in jeopardy and that he asked plaintiff to write a summary of all the major accounts he had lost in the past.

On or about February 23, 1987 Mr. Antoine and Mr. Stuckmeyer were on a sales trip to Oklahoma City, which was in plaintiff's territory. After their sales call, they decided to visit a Safeway store (one of plaintiff's accounts) to see how defendant's products were presented on the shelves. At the Safeway store, Mr. Antoine and Mr. Stuckmeyer learned that none of defendant's products were being carried by Safeway. They went to defendant's broker and were informed that the balance of the Safeway account had been discontinued some weeks earlier. Thereafter, Mr. Stuckmeyer telephoned plaintiff, who expressed his surprise over the loss of the account.

Plaintiff acknowledged to Mr. Stuckmeyer that he did not know that the balance of the Safeway account had been terminated.

Plaintiff testified that he was told several times that he had to make certain defendant didn't lose any new accounts. He stated that Mr. Antoine mentioned it several times in the first year he came down.

On February 26, 1987, Antoine, Purcell, and Stuckmeyer reviewed plaintiff's performance in telephone conversations among them. It was decided that the loss of the Oklahoma City Safeway account and his lack of knowledge thereof were indicative of plaintiff's inability or unwillingness to retain new accounts and to work closely with customers and brokers, despite the fact that plaintiff had been warned of these shortcomings in January 1986 and throughout the next year. As a result, it was decided unanimously by Antoine, Purcell, and Stuckmeyer that plaintiff's employment would be terminated.

On February 27, 1987 plaintiff was terminated. In the termination letter, plaintiff was told:

This is being done because of your continual inability in the past three years to retain business. New business that cost Green Bay Food Company considerable money in an introductory period. Your responsibility was to work with your Food Brokers and the key account personnel to make the programs successful. If the accounts sales were not what we had anticipated, it was your responsibility to use any other program within reason to obtain the sales needed to keep our line in the account. This you failed to accomplish.

The plaintiff was terminated for the very reasons for which he had been counseled on previous occasions.

On the date of his discharge, plaintiff was issued his annual sales bonus. This was the highest bonus he had received to date. The sales bonus was calculated for all sales persons on a fixed formula which considered three factors: increase in cash sales; increase in profits and return on assets for the whole company.

Plaintiff's bonus was based in large part on increases in sales within his territory during 1986. This was primarily a result of two factors. First, plaintiff's supervisor, Mr. Stuckmeyer, credited plaintiff with approximately $600,000 in new business which Mr. Stuckmeyer had obtained. Second, for accounting purposes, defendant transferred credit for $1.4 million in business from the Green Bay, Wisconsin plant to plaintiff's territory. Plaintiff played no part in obtaining this approximately $2 million of increased business in his territory; the amount was nonetheless included in the calculation of his 1986 bonus. In addition, during 1986, one of plaintiff's accounts (Sam's Wholesale Club) opened numerous new stores in his territory, which accounted for approximately $1.3 million of sales that year.

Loss of accounts is not specifically factored into this bonus formula. Nevertheless, defendant's management considered inability to retain accounts to be a serious shortcoming in a sales manager.

Shortly after plaintiff's termination, defendant commenced a search for an experienced replacement. On an interim basis, plaintiff's territory was covered by John Hinson (age 40), Jimmy Reeves (age 62), Phil Morris (age 39) and Mr. Stuckmeyer (age 52). On June 8, 1987, defendant hired Weldon Cole (age 53) as a replacement for plaintiff as regional sales manager. Mr. Cole's territory includes Texas, Louisiana and Oklahoma, all of which were previously part of plaintiff's territory. Mr. Stuckmeyer retained responsibility for accounts in the State of Arkansas.

In June, 1987 defendant also hired a 24 year-old individual, Jim Havenstrite, as a sales trainee to learn the marketing business. A sales trainee job is not comparable in scope of duties to the position which plaintiff had held. A trainee is learning the business and requires much supervision. It is an entry level sales position. Plaintiff has no knowledge of the actual job duties which Mr. Havenstrite has performed for defendant.

During the first four or five months of his employment, Mr. Havenstrite spent the majority of his time learning the pickle business, including working in defendant's manufacturing plant. He accompanied Mr. Stuckmeyer on sales calls from time to time as part of his training. In November 1987, as a training exercise, Mr. Havenstrite did call on Hale–Halsell, Inc., a long-standing customer of defendant. This account was but one of the numerous accounts within plaintiff's territory. In March, 1988, after completion of his training, Mr. Havenstrite was transferred to another division of Dean Foods Company, located in the State of New York. From November 1987 to March 1988, Weldon Cole, as regional sales manager, retained authority to set pricing programs and make proposals to Hale–Halsell.

Plaintiff is not aware of any instance where defendant terminated any senior sales person within the protected age group and replaced him with a substantially younger person.

Since 1985, defendant has hired the following sales personnel:

| Name | Hired | Age at Date of Hire |
| --- | --- | --- |
| Phil Morris | 02/01/85 | 37 |
| John Hinson | 03/01/86 | 40 |
| Weldon Cole | 06/01/87 | 53 |
| Dennis Blaser | 01/02/85 | 27 |
| Richard Banks | 01/02/85 | 43 |
| Robert Wagner | 05/13/85 | 28 |
| David Taflinger | 09/09/85 | 22 |
| Daniel Canadeo | 10/03/85 | 62 |
| Henry Kerns | 03/10/86 | 37 |
| Lori Edwards | 03/17/86 | 33 |
| Douglas Staszak | 02/18/87 | 33 |
| Gary Senter | 04/21/87 | 49 |
| Wayne Robinson | 01/01/87 | 56 |
| Jim Schmidt | 08/24/86 | 32 |
| Ann Stratte | 02/08/88 | 33 |
| Jim Havenstrite (Trainee) | 06/01/87 | 24 |
| Robert Gay (Trainee) | 02/08/88 | 32 |

Since January 1985 none of defendant's salespeople have been terminated from the Atkins plant other than plaintiff. Sales personnel terminated by defendant from other locations were as follows:

| Name | Date Terminated | Age at Date of Termination |
| --- | --- | --- |
| Dennis Blaser | 01/03/86 | 28 |
| Richard Banks | 01/30/86 | 44 |
| Lori Edwards | 01/30/87 | 34 |

■ To recover in an action brought under the ADEA, the plaintiff has the burden of establishing a prima facie case of age discrimination. *Bethea v. Levi Strauss & Co.*, 827 F.2d, 355, 357 (8th Cir.1987); *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 135 (8th Cir.1985); *Jorgensen v. Modern Woodmen of America*, 761 F.2d 502, 504 (8th Cir.1985). Once such a showing has been made, the burden of production shifts to the employer to produce evidence showing that its actions were taken for legitimate, nondiscriminatory reasons. *Bethea, supra,* 827 F.2d at 357; *Gilkerson, supra,* 770 F.2d at 135; *Jorgensen, supra,* 761 F.2d at 504. If the employer makes such a showing, the ultimate burden that a plaintiff must meet is to show that age was a determining factor in the actions taken by the employer. *Bethea, supra,* 827 F.2d at 357; *Gilkerson, supra,* 770 F.2d at 135; *Jorgensen, supra,* 761 F.2d at 504. The ultimate factual issue is whether the employer intentionally discriminated against the employee. *United States Postal Service v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In order to make a prima facie case, the plaintiff must show: (1) the plaintiff was within the protected age category; (2) the plaintiff's performance met the legitimate expectations of the employer; (3) the plaintiff was terminated from the job, and (4) a younger person was hired in his place. *Clements v. General Accident Insurance Company of America,* 821 F.2d 489, 491 (8th Cir.1987); *See also Raschick v. Prudent Supply Co.,* 830 F.2d 1497 (8th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). The fact that defendant expected the plaintiff to work at retaining new accounts was certainly a legitimate expectation of the defendant.

In a memo dated February 26, 1987, from Robert Antoine to Dennis Purcell, Mr. Antoine listed six accounts lost by plaintiff. Plaintiff addressed each loss as follows:

(1) *Safeway, El Paso, Texas.* This was an account that was sold on the first year of purchase after Dean Foods bought the company. The account was lost in 1985 and plaintiff contends there was a decision between plaintiff and Mr. Wallace not to try to keep the account. It was an unprofitable account based upon the method of delivery.

(2) *Safeway, Oklahoma City.* Plaintiff stated that he anticipated they might lose the business because the sales were so soft. He contends that he presented a program to try to rejuvenate the account. This account had been lost before because of a misunderstanding of a broker, and plaintiff told Stuckmeyer there was always a chance the account could be lost.

(3) *Super Food Services.* Plaintiff contends that this account was turned over to John Hinson prior to losing the account. Hinson was hired sometime in 1986.

(4) *Affiliated—Dallas.* The decision to make a presentation to these people was made before Green Bay purchased Atkins Pickle. The sale was made, but plaintiff contends it was subsequently lost when a competitor came and submitted a higher proposal.

(5) *Scrivner Stores.* This account was acquired prior to Green Bay's purchase of Atkins Pickle. According to plaintiff, the account was lost when the man who was instrumental in putting defendant into Scrivner Stores resigned his position and went to Kansas. His replacement decided he didn't need Atkins pickles.

(6) *Cullum—Dallas.* Plaintiff stated this account was lost mainly because of the termination of the broker.

The evidence at trial showed that plaintiff had been informed repeatedly by his superiors that losing newly-acquired accounts was considered to be too costly to defendant and would not be tolerated. Plaintiff had also been counseled that he was expected to work more closely with brokers and customers to minimize such losses. Plaintiff conceded that Mr. Stuckmeyer had warned him about "being in trouble" a few weeks before his discharge.

■ Plaintiff's threshhold burden was to show that his performance met defendant's

legitimate expectations.[1] *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 289 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). In the face of this accumulation of evidence of management's dissatisfaction with his performance, plaintiff relied principally on the fact that defendant paid him a large bonus immediately prior to firing him.

However, the record shows without dispute that the bonus was the product of a fixed mathematical formula which did not consider as a factor the failure to retain new accounts long enough to make them profitable. There is a universe of performance criteria (*e.g.*, customer relations, attendance, interaction with co-workers, attitude toward supervision, etc.) which could affect defendant's satisfaction within an employee's performance without affecting his bonus formula. The defendant's bonus formula might be viewed as failing to consider important performance attributes, but it is the bonus formula the company has chosen and the ADEA "does not authorize the courts to judge the wisdom of a corporation's business decisions." *Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161, 1166 n. 8 (8th Cir.1985). As the Eighth Circuit has noted:

> Whether or not the Company's decision ... is itself a sound business decision is irrelevant to our inquiry. The ADEA is not intended to be used as a means of reviewing the propriety of a business decision on the part of Modern Woodmen. (citation omitted).

*Jorgensen v. Modern Woodmen of America*, 761 F.2d 502, 505 (8th Cir.1985); *See also, Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

In any event, plaintiff's receipt of a bonus does not negate his unsatisfactory conduct, nor does it establish that he was "qualified." *See e.g., Halsell v. Kimberly–Clark Corp., supra,* where evidence of a recent pay raise was held not to establish that the plaintiff "was qualified for the job and, thus, did not raise an inference of age discrimination." *Halsell*, 683 F.2d at 291.

Plaintiff also relied on a congratulatory letter sent to him by Mr. Antoine in April of 1985 as evidence that he was adequately performing his job. But the issue in the case is whether plaintiff met defendant's expectations at the time of his discharge. Obviously, this single letter of praise is too remote in time to have any probative value as to the issue of plaintiff's discharge nearly two years later.

Plaintiff's prima facie case also required him to prove that he was replaced as regional sales manager by a younger person. *Clements v. General Accident Insurance Co. of America*, 821 F.2d 489, 491 (8th Cir.1987). The factfinder cannot draw an inference of unlawful age discrimination if "the employees who were allegedly given preferential treatment were not 'young.'" *Barber v. American Airlines, Inc.*, 791 F.2d 658, 660 (8th Cir.1986), *cert denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).

The plaintiff has failed to convince the Court that he was replaced by a "younger" person. The evidence at trial showed that shortly after plaintiff's termination, defendant retained Weldon Cole (age 53) to cover plaintiff's sales duties. Plaintiff's Arkansas territory was assumed by Roy Stuckmeyer (age 52). In June 1987—at the time Mr. Cole was retained as plaintiff's replacement—defendant also hired James Havenstrite (age 24) as a sales trainee at the Atkins plant.

Plaintiff was a regional sales manager with responsibility for all sales activity involving numerous accounts in six states.

---

1. As the Seventh Circuit has noted in *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 n. 4 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987):

   > The most obvious legitimate reason for the discharge of an employee is that the employee's inadequate job performance necessitated his termination. In the instant case, Dale was warned that his job performance was inadequate and was subsequently terminated for that very reason. Thus, pursuant to the framework established in the *Furnco* line of cases cited *supra,* Dale must eliminate inadequate performance as the reason for his discharge in order to establish a *prima facie* case. Dale has not done this.

In the week after plaintiff's discharge, the record shows that Mr. Phil Morris, age 39, was given nominal responsibility for *one* of plaintiff's numerous accounts (Hale–Halsell Co. in Oklahoma). But Morris did not actually call on Hale–Halsell. Jimmy Reeves, who is *older* than plaintiff, covered certain Texas accounts of plaintiff's. When Weldon Cole was hired, he covered Texas, Louisiana and Oklahoma. Mr. Stuckmeyer covered accounts in Arkansas.

The record does not support plaintiff's contention that Jim Havenstrite, a 24 year-old sales trainee, was intended to replace an experienced regional sales manager. There is always a degree of overlap between a trainee position and a more experienced position; otherwise there would be little, if any, training opportunity on the tasks the trainee eventually will need to perform. The Seventh Circuit analyzed a similar situation in *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir. 1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), and stated:

> On the second question, whether the employer sought younger people to perform Kephart's job, plaintiff has presented documents showing that several new younger economists have been hired by IGT. Although these new employees did work that Kephart could have done, there is no showing that they did the work that he was supposed to do either as assistant director or as senior economist. Kephart's was a position of more responsibility than appears to have been given to the new economists.

630 F.2d at 1223. As in *Kephart,* Pritchett's was a position of more responsibility than was given to the younger sales trainee.

Plaintiff, in his trial brief, appears to argue that even though some of the individuals who assumed plaintiff's accounts were within the protected age group, they also lost accounts and weren't reprimanded. For support, plaintiff cites *Healy v. New York Life Insurance Co.,* 860 F.2d 1209 (3rd Cir.1988) where the court held that a 56–year–old vice-president was replaced by a 47–year–old man was sufficient to establish a prima facie case of age discrimination, where it was proved that the 47–year–old did not have the experience of the 56–year–old. Plaintiff states that Roy Stuckmeyer and Jim Reeves both lost accounts and neither of them were reprimanded. He also contends that Jim Reeves did not have experience in these areas. The Court is unpersuaded by plaintiff's arguments. Roy Stuckmeyer was 52 and Reeves was 62. The court in *Healy* held that plaintiff established a prima facie case since he showed (1) at age 56 he was a member of a protected class; (2) he was qualified for the position; (3) he was discharged, and (4) the position was filled by a person *sufficiently younger* to permit an inference of discrimination. (emphasis added). The plaintiff has failed to prove that those individuals who assumed responsibility for plaintiff's accounts were sufficiently younger or inexperienced.

Even assuming that plaintiff presented a prima facie case of age discrimination, defendant's rebuttal overwhelmingly established its legitimate, non-discriminatory reason for discharging plaintiff, and plaintiff failed to prove that the defendant's articulated reasons for discharge were pretextual.

In an ADEA case, the defendant employer need not persuade the court that the proffered reason in fact justified the discharge because the issue is not whether the reason articulated by the employer warranted the discharge, but whether the employer acted for a nondiscriminatory reason. *Halsell, supra,* 683 F.2d at 291–92. "[i]t is not sufficient for the plaintiff simply to produce evidence to show that reasonable minds might differ as to the quality of his work." *Bossalina v. Lever Brothers Co.,* 47 F.E.P. 1264, 1986 WL 9814 (D.Md.1986), *aff'd.* 849 F.2d 604 (4th Cir.1988).

Thus, even though plaintiff gave his own reasons for the loss of the accounts set out in Antoine's letter, and even if people might have differed about the quality of plaintiff's work, the Court must decide whether the defendant acted for a non-discriminatory reason.

Plaintiff contends that his sales in 1986 were up 1.6 million over 1985 sales; that the loss of one of the accounts was attributable to the defendant's firing of one of the brokers; that defendant had a policy of hiring "inexperienced sales personnel" which was age discriminatory; that his bonus reflected satisfactory performance; and that there was a pattern of age discrimination.

As stated earlier, the testimony revealed that figures used to compute plaintiff's sales performance in 1986 included accounts transferred from the Green Bay plant's books to the Atkins plant's books numerous accounts. Further, Stuckmeyer handed over to plaintiff $600,000 in business which Stuckmeyer had initially obtained. It also included plaintiff's biggest account—Sam's Wholesale Clubs—whose rapid growth created incredible sales increases.

With respect to the loss of one of the accounts (Cullum) because the broker ("Leon "Curly" Mayes) was fired, Mr. Mayes stated in his deposition that he believed certain items of defendants were just not moving quickly enough to satisfy Cullum.

Plaintiff also points to a policy of hiring inexperienced sales trainees as evidence of age discrimination. However, Stuckmeyer testified they were interested in inexperience, not youth. An inexperienced trainee could be in his 50's. Such a management philosophy is not inherently discriminatory. *Dale v. Chicago Tribune Co.*, 797 F.2d 458 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

Plaintiff also points to the retirement of Jim Reeves as evidence of a pattern of discrimination. Jim Reeves testified that he was given the option of retiring, or there would be "nothing down the road." Although this kind of attitude might be suspect and is not condoned by the Court, the Court cannot say that this one instance established a pattern or policy of discrimination. Furthermore, the fact that Reeves was replaced by a "young" employee by itself does not require a finding that discrimination occurred. *See Kier v. Com-mercial Union*, 808 F.2d 1254, 1259 (7th Cir.1987), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987).

In conclusion, the Court finds that the plaintiff failed to present a prima facie case of age discrimination. Even if the Court found otherwise, there was sufficient evidence presented that defendant had a legitimate non-discriminatory reason for terminating plaintiff and that these reasons were not pretextual. Plaintiff was not performing his job in a satisfactory manner, and the Court is persuaded that plaintiff failed to show that age was a determining factor in his discharge.

The Court finds that judgment should be, and will be, entered in favor of the defendant.

ORDERED.