John MORGAN, Appellee,

v.

The ARKANSAS GAZETTE, Appellant.

No. 88–1901.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1989.

Decided March 2, 1990.

Rehearing and Rehearing En Banc
Denied May 14, 1990.

Janet L. Pulliam, Little Rock, Ark., for appellant.

Richard Quiggle, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WATERS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

A jury found that the Arkansas Gazette Company willfully discriminated against John Morgan in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987) (ADEA). The jury awarded Morgan back pay and liquidated damages, and the district court[1] ordered reinstatement and an award of prejudgment interest. On appeal, the Gazette argues that: (1) the district court erred in not granting the Gazette's motion for a judgment notwithstanding the verdict not only because there was insufficient evidence to support the jury verdict, but also because of certain statements of Morgan, (2) the court erred by refusing to give a "good faith" instruction to the jury; (3) the court made various evidentiary errors; (4) the court abused its discretion in ordering that Morgan be reinstated; (5) the award of front pay has been waived or is precluded under the facts; and (6) the court erred in allowing Morgan to recover both liquidated damages and prejudgment interest. For the reasons stated below, we affirm Morgan's judgment of actual damages but reverse the award of liquidated damages because the evidence was insufficient to show a willful violation of the ADEA. We also affirm the court's order granting Morgan reinstatement and prejudgment interest.

Morgan began working for the Gazette in 1974. After serving in various positions in the circulation department, he worked as a circulation branch manager until he was terminated in 1986 at the age of forty-four. He was fired by the city circulation manager, Tony Tinker, age thirty-three, and replaced by Brad Cromley, age twenty-eight. Morgan filed suit against the Gazette, claiming that he was discharged because of his age. He alleged a pattern and practice of age discrimination in terminations and transfers.

The Gazette argues that Morgan was terminated because of his poor performance and his falsification of sensitive documents. It claims that Morgan knowingly submitted false circulation figures to the Audit Bureau of Circulation. The Audit Bureau determines the rates that a newspaper may charge its advertisers based on the circulation figures submitted by each newspaper. Morgan admits that he submitted false circulation data but claims that his immediate supervisor, Jake Mathews, ordered him to falsify the information and that Tony Tinker, the city circulation manager, was aware of the scam. The Gazette denies Morgan's accusation and claims that its policy is to fire all employees who falsify documents.

More detailed evidence surrounding this controversy will be set forth later as we discuss issues which make it relevant.

At the conclusion of the five day trial, the district court submitted special interrogatories to the jury. The jury's answers to those interrogatories reveal that it found that Morgan's age was a determining factor in the Gazette's decision to discharge him and that it was a willful decision to discharge him because of his age. Based on these findings and the jury's determination of damages, Morgan was awarded $35,641.40 in back pay and another $35,641.40 in liquidated damages for the willful violation. The court also ordered that Morgan be reinstated to his former position with the Gazette or a similar position because it found that there were no exceptional circumstances which would justify not reinstating him. Specifically, the court observed that Morgan's position was not a high level, unique, or unusually sensitive position and that any animosity between the parties was largely eradicated because the employees most closely associ-

---

* The HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

ated with the case were no longer working for the Gazette. In addition, the court granted Morgan's request for prejudgment interest and rejected the Gazette's argument that awarding both prejudgment interest and liquidated damages constituted a double recovery. This appeal followed.

### I.

The Gazette asserts that it was entitled to a judgment notwithstanding the verdict as a matter of law and, alternatively, that the evidence was insufficient to support a finding of age discrimination. The ADEA protects individuals who are at least forty years of age from discrimination in "compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).

We have dealt with claims of insufficient evidence in age discrimination cases on numerous occasions. It is well-established that the allocation of burdens and ordering of proof set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), applies to age discrimination cases brought under the ADEA. *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1134 (8th Cir.1989). Under the *McDonnell Douglas* guidelines:

> [T]he plaintiff has the burden of establishing a prima facie case of age discrimination. Once such a showing has been made, the burden of production shifts to the employer to produce evidence showing that its actions were taken for legitimate, nondiscriminatory reasons. If the employer makes such a showing, the ultimate burden that a plaintiff must meet is to show that age was a determining factor in the actions taken by the employer.

*Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 357 (8th Cir.1987) (citations omitted). ■ Our task upon appeal of an age discrimination case, however, is a limited one. This court will not assess the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* analysis. *Gilkerson v. Toastmaster*, 770 F.2d 133, 135 (8th Cir.1985). Rather, we are directed

to focus our attention upon the ultimate factual issue of whether the employer intentionally discriminated against the employee. *United States Postal Serv. Bd. of Gov. v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). Once a finding of discrimination has been made and that judgment is being considered on appeal, the *McDonnell Douglas* "presumptions fade away, and the appellate court should simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial." *Barber v. American Airlines*, 791 F.2d 658, 660 (8th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).

■ In reviewing the district court's denial of the Gazette's motion for a judgment notwithstanding the verdict, we apply the same standard as the district court. *Cleverly v. Western Elec. Co.*, 594 F.2d 638, 641 (8th Cir.1979) (per curiam). This standard requires that we:

> 1) consider the evidence in the light most favorable to [Morgan], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in [Morgan's] favor; 3) assume as proved all facts which [Morgan's] evidence tends to prove; 4) give [Morgan] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it.

*Gilkerson*, 770 F.2d at 136. This court, in an opinion authorized by Judge Arnold, discussed in detail the application of this standard in *Dace v. ACF Industries*, 722 F.2d 374 (8th Cir.1983), also an age discrimination case. We noted that "our precedents predominantly support the general proposition that only the evidence favoring the nonmoving party (usually, as here, the plaintiff) should be considered." *Id.* at 376. We further stated that "evidence favorable to the moving party may not be considered, because if it were the court would have to pass on the credibility of that party's witnesses." *Id.* As the Supreme Court has

declared, "in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given." *Wilkerson v. McCarthy*, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949). This careful analysis by Judge Arnold in *Dace* has been followed by this court on numerous occasions. *See Brooks v. Woodline Motor Freight*, 852 F.2d 1061, 1063 (8th Cir.1988); *Taylor v. Cochran*, 830 F.2d 900, 902 (8th Cir.1987), *cert. denied*, 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 704 (1988); *Glismann v. AT & T Technologies*, 827 F.2d 262, 265 (8th Cir.1987).

Thus, our task is to apply this standard of review to determine whether the evidence supports submission of the age discrimination issue to the jury. Both parties presented evidence at trial which is totally irrelevant to the age discrimination issue. In truth, the record as a whole contains relatively little discussion of the age issue but instead appears to have served primarily as a means for the parties to ventilate their differences. It is only by painstaking study of the transcript as a whole that we are able to glean the limited references to the age discrimination issue. We must look only to this evidence with respect to the age issue, and determine whether, in the light most favorable to Morgan, giving him the benefit of all favorable inferences, there was sufficient evidence to support the jury's finding that age was a determining factor in the Gazette's decision to discharge him.

Doyle Cates, age fifty-seven and a former assistant circulation branch manager at the Gazette currently on long-term medical leave, testified that he had discussed the subject of age discrimination with Don Davis, vice president and circulation director of the Gazette. (Tr. 173). Davis agreed that Cates had told him that Morgan had been treated unfairly and that the city circulation department was out to get rid of employees over forty. (Tr. 154). Cates observed that in the year and a half prior to his conversation with Davis, all of the older employees had left the city circulation department by transferring elsewhere, retiring voluntarily, or being forced to retire. (Tr. 173–74). He stated that there was a trend to go from older, more experienced employees to younger ones. (Tr. 174). It was his understanding that younger persons were replacing older persons. (Tr. 174).

On the other hand, Cates said in his deposition that he could not recall any particular attitude that Tinker displayed toward Morgan because of Morgan's age, nor when Morgan began to think his termination was related to his age. (Tr. 210–11). He also declared in his deposition that he did not know whether Morgan's termination was related in any way to his age. (Tr. 211).

Jake Mathews, age sixty-two, was home delivery manager and Morgan's immediate supervisor at the Gazette. He denied that Tinker had told him that Tinker would force three people over age forty to quit or else he would fire them. (Tr. 229). Mathews said that he had not made such a statement to Morgan either. (Tr. 229). Mathews also testified, however, that he could not name anyone under forty who had been placed on probation during his time with the Gazette. (Tr. 747). As far as he knew, only he and Morgan had been put on probation. (Tr. 747).

Tony Tinker, age thirty-three and the city circulation manager, testified about the replacement of older employees with younger employees. He said that Charlie Roberts, age fifty-two, was transferred to the metro division and replaced with Bill Wehner, age thirty-three, (Tr. 294), and that Bill Conners, age sixty-eight, was replaced with John Yeargain, age thirty-one. (Tr. 294). Tinker also testified that Carl Peterson, who was in his fifties, was replaced by Ben Livingston, age thirty-four. (Tr. 294–95).

David Carr, a former branch manager who had worked for the Gazette for eleven years, testified that he felt his age, forty-one, had an effect on his employment at the Gazette. (Tr. 299). He felt it was a factor in his harassment and termination

by the Gazette. (Tr. 299). He said that the Gazette personnel records listed his age as forty-six when he was really forty-one. (Tr. 299). Carr testified that Tinker said that Mr. Reed, the former circulation director, was an old "fuddy-duddy" who was not smart enough to help him in the circulation department. (Tr. 321). When Carr was asked if there were other ways his age affected his employment, he responded that some younger employees were paid more than he was paid. (Tr. 329). He identified Brad Cromley as an example. He said Cromley started at a higher salary as branch manager than Carr was paid after being with the Gazette eleven years. (Tr. 329). Carr testified that Tinker hired Ben Livingston, a younger employee, and treated him better than he treated Carr. (Tr. 329). Carr also said that younger employees were given information before he received it and given longer deadlines to turn in reports. (Tr. 328).

Ed Marsh, age forty-five and a former circulation employee of the Gazette, stated that he had observed that older employees, specifically John Morgan and David Carr, were fired from the Gazette. (Tr. 365). He recalled having a conversation with another Gazette employee who told him that Morgan was fired because he was not a part of the "new wave or new movement." Marsh could not recall who made this statement. (Tr. 367). Marsh also testified, however, that he did not recall anyone saying that age played a big part. (Tr. 370). He said that Tinker seemed to prefer to surround himself with young, inexperienced employees. (Tr. 374). Marsh said he had not initially focused on discrimination because of age because he thought that Tinker was out to fire everybody but later realized that Tinker fired only those who had been there for any length of time. (Tr. 375).

Morgan himself testified that he had told Davis, just as he had told Tinker, that Tinker was discriminating against older employees, including himself. (Tr. 414). He said that he had requested of Davis

only that he have a fair hearing. (Tr. 414). Morgan testified that he met with George Van Wagner, general manager of the Gazette, after his termination and told Van Wagner that he thought his termination was due to age discrimination but that Van Wagner did not respond. (Tr. 472–73). Morgan said he felt he was in a dilemma regarding the falsified documents because, no matter what he did, he would get fired because Tinker was out to get all the older, experienced employees. (Tr. 543). He further testified that Tinker ordered him to fire Cates, age fifty-seven, and Edenfield, age fifty, and Tinker told Morgan that if he did so, his salary would be increased and his probation eased. Morgan thought it was because of Cates' and Edenfield's ages, experience, and salaries. (Tr. 558, 561).

Jo Ann Campbell, age forty-five and employed with the Gazette outside of the circulation department, testified that she had applied for a zone manager's position but that it was given to Keith Sanford, who was in his early thirties. (Tr. 597). She also admitted, however, that Sanford had more experience in circulation. (Tr. 597).

Robert Kaiser, age fifty-five and a former circulation employee, testified that he had interviewed with Tinker for a branch manager's position but did not get it. (Tr. 634). He assumed that the reason for the rejection was his age because there had never been a branch manager appointed during his time with the Gazette who was older than himself or anywhere near his age. (Tr. 634–35).

■ Much of the testimony recited above can be described as no more than individual employees' opinions of actions taken by their employer, which, in themselves, are insufficient to support Morgan's argument that his age was a determining factor in his discharge. There was, however, evidence that, during Tinker's administration, a pattern of employees over the age of forty leaving the circulation department and being replaced by younger employees developed.[2] (Tr. 155–60). As we observed in

---

2. Don Davis, vice president and circulation director testified that the following employees

over forty left the city circulation department and were replaced by younger employees:

*MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054 (8th Cir.1988), in a similar context, "[t]his fact is certainly not conclusive evidence of age discrimination in itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome." *Id.* at 1058.

There are additional threads of evidence which can be gleaned from the record to support a finding that age was a determining factor in the decision to fire Morgan. Carr testified that Tinker hired a younger employee, Livingston, and treated him better than he did Carr, and that younger employees were given information before he received it and also longer deadlines for reports. There was testimony from Marsh that Tinker seemed to prefer to surround himself with young, inexperienced employees, and that he later realized that Tinker fired only those who had been with the Gazette for any length of time. Morgan testified that Tinker ordered him to fire Cates and Edenfield, both age fifty or older, and that Morgan's salary and probation would benefit if he did so. Kaiser testified that there had never been a branch manager appointed during his time with the Gazette who was older than himself, fifty-five, or anywhere near his age. There was the testimony from Mathews that no one under forty had been placed on probation during his time with the Gazette, although both he and Morgan had been put on probation. There was Cates' observation of a trend away from older, more experienced employees toward younger ones. Finally, Carr told of Tinker's statement that a former circulation director was an old "fuddy-duddy" and not smart enough to help in the circulation department.

Although this was a close case, our task on review is not to act as the trier of fact. *See Gilkerson*, 770 F.2d at 136. Accord-ingly, we are compelled to conclude that there was sufficient evidence to support the jury's conclusion that age was a determining factor in Morgan's discharge.

■ The Gazette argues adamantly that since Morgan admitted falsifying sensitive documents and then failed to produce evidence of persons outside the protected age group who were not discharged for the same offense, the court was required to grant the motion for judgment notwithstanding the verdict as a matter of law. This argument is without merit. In *Bethea v. Levi Strauss & Co.*, we stated that the employer's articulation of a legitimate, non-discriminatory reason for the discharge does not automatically entitle the employer to a judgment notwithstanding the verdict. 827 F.2d at 358. "In its consideration of all the evidence the jury could still find that [the employee's] evidence established that the reasons articulated were pretextual." *Id.* We stressed this principle in *MacDissi* by stating that, "[a]s a matter of both common sense and federal law, an employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred." 856 F.2d at 1059.

This principle governs our review of the court's denial of the judgment notwithstanding the verdict in this case. It was for the jury to determine whether Morgan was terminated for the reasons proffered by the Gazette, falsifying documents and poor performance, or whether such reasons were mere pretext for age discrimination, as urged by Morgan. This inquiry depends heavily on an assessment of the credibility of witnesses, a task for which the jury was particularly fit. Apparently the jury rejected the Gazette's explanation for firing Morgan as mere pretext, and therefore, our

Charles Edenfield, Charlie Roberts, Ed Parr, and Jo Ann Campbell transferred to other departments; David Carr resigned; Burl Duncan and Bill Conners retired; Doyle Cates went on medical leave of absence; and John Morgan was fired. (Tr. 155–60). This represented the majority, if not all, of the older employees in city circulation during Tinker's management of the department, which included a total of about thirty employees. While we agree with the Gazette that not all of these changes were necessarily related to age discrimination, this pattern raises an inference of discrimination which, together with the other evidence discussed here, was sufficient to permit the jury to resolve the issue.

task upon review is to determine whether Morgan's evidence supports a reasonable inference that he was not fired for the reasons given by the Gazette. *Bell v. Gas Serv. Co.*, 778 F.2d 512, 516 (8th Cir.1985). We believe that the evidence here supports such a reasonable inference. Therefore, we affirm the district court's denial of the judgment notwithstanding the verdict and the court's judgment awarding ·Morgan back pay.

## II.

The Gazette argues that the district court erred as a matter of law by refusing to instruct the jury to consider the Gazette's good faith as an integral part of determining whether it had willfully violated the ADEA. We need not decide whether the court erred in its instructions because we believe that the evidence was insufficient to submit the issue of willfulness to the jury. Liquidated damages may only be awarded where it is established that the employer willfully violated the ADEA. 29 U.S.C. § 626(b). Willfulness has not been established in this case.

■■■ The Supreme Court adopted a standard for determining whether a violation of the ADEA was "willful" in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128, 105 S.Ct. at 625 (quoting *Air Line Pilots Ass'n Int'l v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir.1983)). The Court rejected the notion that an employer's knowledge that the ADEA was "in the picture" was sufficient. *Id.* at 127–28. The Court indicated that adopting a broader standard would lead to the undesirable result of awarding "double damages in almost every case." *Id.* at 128. "Thus, in order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's 'reckless disregard.'" *Bethea*, 827 F.2d at 359

(quoting *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625).

■■■ We do not believe that Morgan's evidence on the willfulness issue meets the standard established in *Thurston.* "Under the *Thurston* standard, willfulness requires more than an employer's knowledge that the ADEA exists." *Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 471 (8th Cir. 1989). In addition, we have previously recognized that, in a disparate treatment case, such as this one, proof of willfulness requires more than just an inference from an arguable pretextual justification. *Neufeld v. Searle Laboratories*, 884 F.2d 335, 340 (8th Cir.1989). While Morgan did succeed in establishing that the Gazette violated the ADEA, he failed to establish that the Gazette recklessly disregarded the law. We "find nothing in the record which suggests the kind of conscious intent to violate the law which would justify a finding of willfulness." *MacDissi*, 856 F.2d at 1061. Accordingly, Morgan is not entitled to liquidated damages under 29 U.S.C. § 626(b).

## III.

■■■ The Gazette asserts that the district court erred by admitting certain evidence, particularly two charts used to compare Morgan's performance with that of his successor, Brad Cromley. The Gazette asserts that Morgan used a "one day average" to assess Cromley's performance but a different measure for his own performance and therefore, it was highly prejudicial to admit this evidence. To a great degree, the Gazette's arguments on this point; as well as Morgan's in response, should more properly have been addressed to the jury to aid it in assessing the probative value to give these exhibits rather than to this court. Furthermore, we have consistently held that the admission of evidence is a matter for the district court's discretion and we will defer to the district court's ruling absent an abuse of discretion. *See Roth v. Black & Decker*, 737 F.2d 779, 783 (8th Cir.1984); *Radtke v. Cessna Aircraft Co.*, 707 F.2d 999, 1001 (8th Cir.1983). We are not convinced that there is such an abuse of discretion here.

## IV.

The Gazette contends that the district court abused its discretion by ignoring exceptional facts and circumstances which mandate denying Morgan's request for reinstatement. We are not persuaded that there was an abuse of discretion.

The ADEA authorizes courts to order equitable relief, such as reinstatement, "as may be appropriate to effectuate the purposes" of the Act. 29 U.S.C. § 626(b). It "provides legal and equitable remedies to eliminate the unlawful practices and to restore aggrieved persons to the position where they would have been if the illegal discrimination had not occurred." *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1097 (8th Cir.1982). The district court carefully adhered to the principles we set out in *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276 (8th Cir.1983), in ordering that the Gazette reinstate Morgan. It cited *Dickerson* for the proposition that "[t]he provision for equitable relief in ADEA cases is intended to effect the central statutory purpose of eradicating discrimination. Often the only way this purpose can be effected is by compelling employment." *Dickerson*, 703 F.2d at 280. The court further noted that *Dickerson* makes clear that a request for equitable relief should be denied "only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)).

The court then proceeded to discuss the evidence presented by the Gazette supporting its request for denying reinstatement and found that exceptional circumstances which would justify refusing to reinstate him did not exist. Morgan's position was not a "high level, unique or unusually sensitive" position, *Dickerson*, 703 F.2d at 280, nor was there "extreme animosity" between the parties, *id.* at 281, because any animosity was largely eradicated since the employees involved were no longer working there.

We review the award of equitable relief only for abuse of discretion. *See Cleverly*, 594 F.2d at 642. The Gazette urges that the district court failed to properly consider that: (1) Morgan admitted providing erroneous information to the Audit Bureau of Circulation; (2) Morgan continually questioned managerial decisions; (3) Morgan questioned the authority and competence of the Audit Bureau of Circulation; (4) Morgan behaved in a hostile manner to Don Davis, vice president and circulation director; and (5) Morgan accepted subsequent employment at the Gazette's competitor newspaper and fully disclosed information to them.

We reject the Gazette's contention that the court abused its discretion by ignoring these facts. All of the points urged by the Gazette were before the court, as well as the jury, and we have no reason to believe that the court did not consider them in determining whether Morgan should be reinstated. Nor do we believe that the circumstances in this case are analogous to those justifying refusal to reinstate in the cases cited by the Gazette, *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061 (8th Cir.1988), and *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321 (7th Cir.1987). In *Brooks*, the record revealed that "there was substantial animosity between the parties, the parties' relationship was not likely to improve, and the nature of the business required a high degree of mutual trust and confidence, which was noticeably lacking." 852 F.2d at 1066. In *Coston*, the court found reinstatement inappropriate where the position required the employee to "hold himself out to the public as a managerial representative of the employer," 831 F.2d at 1331, and the employee "served as a higher level managerial representative," *id.*

Such extreme circumstances do not exist in Morgan's case. Any antagonism between the parties here is not "substantial" and does not rise to the level of frustrating "the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suf-

fered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. at 421, 95 S.Ct. at 2373. We observe that, "[a]ntagonism between parties occurs as the natural bi-product of any litigation. Thus, a court might deny reinstatement in virtually every case if it considered the hostility engendered from litigation as a bar to relief." *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

A troublesome argument raised by the Gazette is Morgan's admission that he provided erroneous information to the Audit Bureau of Circulation. Morgan's explanation, however, was that he was ordered to do so by Mathews and that Tinker knew about it. This issue is not one to require entry of judgment as a matter of law, but one that the jury was required to decide. Evidence of Morgan's questioning attitude and hostile behavior were also issues for the jury to resolve. All of these issues were thoroughly ventilated before the jury, as was Morgan's testimony that he accepted employment with the competitor newspaper and disclosed to his new employer "what had happened at the Gazette." (Tr. 497).

We must recognize the jury's acceptance of Morgan's version of the facts, and we are satisfied that it is only through reinstatement that the jury findings can be effectuated. Upon reinstatement, it will be incumbent upon Morgan to abide by policies concerning accuracy of circulation records of the new owner and operator of the Gazette.

We believe that the purposes of the Act will be furthered by Morgan's reinstatement and therefore affirm the district court on this issue.

### V.

The district court ordered that Morgan be reinstated after the jury returned a verdict in his favor. When the Gazette objected to reinstatement, Morgan filed a motion for front pay in lieu of reinstatement. The Gazette argues that Morgan has waived an award of front pay as a matter of law; alternatively, the Gazette asserts that an award is precluded under the facts.

 It is well-established that front pay is an equitable remedy in lieu of reinstatement. *Mohawk Rubber Co.*, 695 F.2d at 1100. In light of our decision to affirm the district court's order to the Gazette to reinstate Morgan, however, it is not necessary to determine whether Morgan has waived an award of front pay or whether it is precluded under the facts. Having been granted reinstatement, Morgan cannot also receive an award of front pay.

### VI.

The Gazette contends that the district court erred as a matter of law in allowing Morgan to recover both liquidated damages and prejudgment interest. Since we have reversed the award of liquidated damages, we need not decide whether a prevailing age discrimination plaintiff may receive both liquidated damages and prejudgment interest under the ADEA. We affirm Morgan's award of prejudgment interest but, as previously discussed, reverse his award of liquidated damages.

### VII.

In conclusion, we affirm the district court's order denying the Gazette a judgment notwithstanding the verdict and affirm the court's award of $35,641.40 to Morgan for back pay based on his age discrimination claim. We also affirm the court's order that Morgan is entitled to reinstatement and prejudgment interest. We reverse, however, the award of liquidated damages to Morgan in the amount of $35,641.40 because we believe that Morgan has failed to establish a willful violation as required by 29 U.S.C. § 626(b). Accordingly, we remand this case to the district court for the entry of an appropriate judgment, including Morgan's costs and reasonable attorney's fees for the proceedings in district court, as well as equitable relief compensating Morgan for any additional damages sustained during the pendency of this litigation and until reinstatement.

WATERS, Chief District Judge, dissenting.

I must respectfully dissent because I believe the majority misapplies the admittedly stringent law in this circuit in respect to the standard of review of the granting or failure to grant motions for judgment notwithstanding the verdict.

In Part I of the opinion the majority correctly points out that this court, in reviewing the district court's denial of the motion for judgment notwithstanding the verdict, must apply the same standard as the district court, and that in doing so it is bound by the standards set forth in cases such as *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985). It then says that:

> It is only by painstaking study of the transcript as a whole that we are able to glean the limited references to age. We must look *only* to this evidence with respect to the age issue, and determine whether, in the light most favorable to Morgan, giving him the benefit of all favorable inferences, there was sufficient evidence to support the jury's finding that age was a determining factor in the Gazette's decision to discharge him. (emphasis supplied).

Immediately following that statement are several paragraphs in which the majority sets forth, it says through "painstaking study of the transcript", the meager references that it could find to age in this transcript of over 1100 pages not including several hundred pages of exhibits. After doing that, it then considered that evidence in a vacuum, totally disregarding all other evidence which I believe it was necessary to consider to place that testimony in context and to enable one to properly determine if it was sufficient. It concluded that it was sufficient, although apparently barely sufficient. In reaching that conclusion, the majority recognized that:

Much of the testimony recited above can be cited as no more than individual employee's opinions of actions taken by their employer, which, in themselves, are insufficient to support Morgan's argument that his age was a determining factor in his discharge.

However, in spite of that candid and correct assessment of plaintiff's evidence, it, wrongly in my view, thought that it was enough, although it cites and refers to no other evidence to support its conclusion other than the testimony which it admitted was "insufficient to support Morgan's argument."[3]

As the majority correctly points out, citing *Dace v. ACF Industries, Inc.*, 722 F.2d 374 (8th Cir.1983), in ruling on motions for judgment not withstanding the verdict, this court is apparently committed to the "general proposition that only the evidence favoring the non-moving party (usually as here, the plaintiff) should be considered", *Id.* at 376, and that "evidence favorable to the moving party may not be considered, because if it were, the court would have to pass on the credibility of that parties witnesses." *Id.* As the author of that opinion points out, that is by no means the rule that is followed in all jurisdictions, and that proposition has been criticized. *See* the discussion in 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2521, and the cases holding to the contrary cited in that article.

Be that as it may, I recognize that we are bound by the rule announced in *Dace* unless and until it is modified by this court. However, I do not believe that *Dace* compels us to pursue the course followed by the majority in this case. I do not believe that this court is relegated to a process almost by rote, of going through the transcript to pick out each piece of evidence which might be considered to be favorable to the plaintiff's case, and is then bound to consider only that evidence, closing our

---

**3.** Some statistics relating to personnel changes are quoted in footnote 2 of the majority opinion and it concludes that "while we agree with the Gazette that not all these changes were necessarily related to age discrimination, this pattern raises an inference of discrimination." Because

of its approach, it, in making this statement, totally disregarded even the uncontroverted evidence which might explain these changes such as the newspaper war with the Democrat and the violently competitive situation that existed at the time, as is more fully discussed below.

"eyes" to all other evidence which the jury could have considered and should have considered in deciding whether this 44 year old man was fired because he was "too old".

I agree that *Dace* directs that we not weigh the evidence and, at least where controverted, we may not choose to believe the Gazette's evidence rather than Morgan's. However, the court in *Dace* recognized that the court's rule explained in that opinion should not be woodenly applied. In footnote 6 the court said:

> We have stated in text what we believe to be the general rule drawn from our cases and the Supreme Court's and there may be particular situations in which the rule should not be rigidly applied. If, for example, the moving party's evidence is completely disinterested, uncontradicted, and unimpeached, or if the evidence of the non-movant is contrary to established scientific fact, some modification of the rule may be called for.... We leave possible refinements of the general rule for another day.

It seems to me that what the majority did in this case, and in fact what it agrees it did, was to undertake a "painstaking study of the transcript" to pick out and "glean the limited references to age" which it summarized in its majority opinion. It seemed to pretend, and it believes that *Dace* and other cases from this court compels it to pretend, that the rest of the trial didn't take place.

Surely it is not the law in this circuit that, in ruling on the motion for judgment not withstanding the verdict, the trial court and this court are permitted only to pick out and consider the "limited references to age" which can be found in this transcript of over 1100 pages not including several hundred pages of exhibits, and is tied irrevocably to consider only that evidence, in a vacuum, totally disregarding all other evidence that would help determine whether it was reasonable for the jury in this case to decide that Morgan was fired because he was 44 years of age. I do not believe that *Dace* says that. Instead, what I believe it says is that courts may not substitute the

judgment of the judge for that of the jury. The court may not weigh controverted evidence. For example, I agree that we cannot weigh evidence which tends to show that Morgan was terminated because of his age, if any could be found, against evidence which tends to show that that is not true. In other words, we could not decide that the Gazette wins because we believe the testimony that it presented by its officers that age played no part in the employment decision made, and disbelieve Morgan's testimony. However, it is quite another thing to say that that rule requires that we disregard all testimony other than that presented in behalf of Morgan, irrespective of whether that other evidence is controverted and whether it is in respect to issues which do not go directly to the question of whether he was terminated because of his age but, instead, help the court determine the reasonableness of the jury verdict.

If that is, indeed the law in this circuit, I respectfully submit that that rule, along with other cases decided by this court discussed below, leaves no workable mechanism for clear miscarriages of justice to be righted, notwithstanding a contrary indication in *Dace, supra*, at 376. In that case the court noted that its rule not allowing the evidence to be weighed in ruling on motions for judgment notwithstanding the verdict would probably "result in fewer grants of motions for directed verdict than would result if judges were free to take cases from the jury because of what they view as very strong evidence supporting the moving party" and as a result of that rule "verdicts may be returned with which judges strongly disagree." The court then stated, in footnote 5, that: "The court retains, of course, the power to grant a new trial, and this action may be taken whenever the trial court, after considering *all* the evidence, is firmly convinced that the jury's verdict will produce a miscarriage of justice."

While that certainly properly states the rule in effect in most jurisdictions,[4] unfortunately, it is not at all clear that trial courts have that much leeway in this circuit

---

**4.** *See* 11 Wright & Miller, *Federal Practice and* *Procedure: Civil,* § 2803.

in ruling on motions for new trial. In addition to the statement in *Dace*, this court has made similar statements in at least the cases of *Bates v. Hensley*, 414 F.2d 1006 (8th Cir.1969) and *Ouachita National Bank v. Tosco Corp.*, 686 F.2d 1291 (8th Cir.1982) *on rehearing, en banc*, 716 F.2d 485 (8th Cir.1983). However, in at least the cases of *Crowley Beverage Co., Inc. v. Miller Brewing Co.*, 862 F.2d 688 (8th Cir.1988) and *McBryde v. Cary Lumber Co.*, 819 F.2d 185 (8th Cir.1987); *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411 (8th Cir.1985); *Firemen's Fund Insurance v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed:2d 592 (1973), this court has variously said that a trial court may not grant a motion for new trial unless it finds that the verdict is against the "clear weight", "overwhelming weight", or "great weight" of the evidence. In fact, in *Firemen's Fund, supra*, at p. 187 the court said that a new trial should not have been granted in that case because: "The evidence is such that reasonable men may differ as to the result...." That theme seems to have been carried forward in the very recent case of *Blake v. J.C. Penney Co., Inc.*, 894 F.2d 274, 281 (8th Cir.1990). In that case the court reversed the trial court's granting of a motion for a new trial and in doing so said, "reasonable minds clearly could have differed to the proper result" and concluded that, thus, "no valid purpose would be served by submitting this case to another jury."

In short, I do not believe that it is the law in this circuit or in any other circuit that trial courts and appeals courts in ruling on motions for judgment notwithstanding the verdict are relegated to searching through the record looking for and considering only references found in the transcript favorable to plaintiff's case, and I don't believe that *Dace* says that that's the law. If it does, in view of the "new trial" cases cited above, I do not believe that there is any viable vehicle for court's to correct clear miscarriages of justice, since the cases discussed above seem to merge Rules 50 and 59 of the Federal Rules of Civil Procedure in that the law seems to be

that the test for determining whether either should be granted is exactly the same. That is what *Firemen's Fund* seems to say and is specifically what *Blake* held. In other words, because of this court's ruling in this case when coupled with the decision in *Blake*, the trial judge can't grant a motion for judgment not withstanding the verdict where reasonable minds can differ as to the result when only the evidence favorable to non-movant is considered, and can't grant a new trial, also because reasonable minds could differ.

I believe that the proper course for the trial court to have taken, and for this court to take in reviewing the action of the trial court, is to consider the entire record, as a whole, not singling out and considering only that evidence that was favorable to plaintiff but, in saying that I don't suggest for one moment that this court should weigh controverted evidence and substitute the judgment of the judges of this court for that of the jury. When all of the uncontroverted evidence is considered, along with that favorable to Morgan, I submit that any fair reading of it shows that the trial judge allowed the parties to try, and the jury tried and decided, a myriad of totally irrelevant issues to the point that no one can really say that this jury decided or, if it did that it was reasonable for it to decide, that this 44 year old man was fired by the Gazette because he was too old. Instead, it was allowed to consider multiple extraneous issues and I have, after reading the entire transcript, a distinct feeling that what the jury really decided was that Morgan, who had been at the Gazette many years, simply should not have been fired because it wasn't "fair" to do so. I am firmly convinced that the verdict of the jury is a miscarriage of justice, and one that should be and should have been corrected.

Even if I believed that the trial court and this court in ruling on a motion for judgment notwithstanding the verdict is relegated to considering only the evidence favorable to plaintiff's position, I could not find that reasonable minds could conclude as this jury did unless the jurors viewed

the evidence with an almost paranoidal approach. Let us review what the witnesses whose testimonies are summarized in the majority opinion said. Doyle Cates, age 57, testified that he had discussed the subject of age discrimination with Don Davis, vice president and circulation director of the Gazette. The majority points out that: "Davis agreed that Cates had told him that Morgan had been treated unfairly and that the city circulation department was out to get rid of employees over 40." So what? This testimony does not, by any stretch of the imagination, show that Morgan was fired because he was 44 years of age. At most, it shows that Cates discussed age discrimination with Davis and told him that Morgan believed that he had been unfairly treated. It proves nothing, and doesn't even tend to prove anything, even when every reasonable inference is given to it.

The majority also cites Cates testimony at pp. 173–174 of the transcript apparently to show that there is some evidence that it was the Gazette's custom to get rid of older employees. To show the rank, speculative nature and lack of probative value of that testimony and other testimony solely relied upon by the majority, I believe that it is appropriate to set it forth verbatim. Cates testified:

Q. Okay. And Mr. Davis agreed with me that you, indeed, brought up the topic of age discrimination to him during that session with him.

A. That's correct.

Q. And did you make those comments about age? Or let me ask you this. What happened to cause you to tell Mr. Davis what you did about age discrimination? What events had you observed that—

A. Well, over the—the year prior to this, year and a half, all the older people, the old hands, had disappeared. They had either been transferred out of the city circulation, they had been retired, and in some cases, forced to retire. I was the last one left. It was a trend to go from the older, more experienced people to the younger men.

Q. Would you give the jury some of the names of the older people that were gone and give the name, if you can, of the younger person who replaced them?

A. I have a list that I jotted down of some of the older ones.

Q. Okay. I'll tell you what I would like for you to do, Mr. Cates, if you don't mind. I would like for you to write down for me—

A. Most of these have already been given in testimony, I think, today.

Q. Okay. Can you tell me who replaced those people?

A. It would be very difficult for me to go back and give exact names of who replaced them.

Q. Okay. We will do it with another witness. That's fine, Mr. Cates.

Q. Was it your general understanding at the time, however, that these older people had been replaced by younger persons?

A. Absolutely.

Q. Did you point that out to Mr. Davis?

A. I don't know that I did at that point.

The majority conceded that Cates also had testified that he did not recall any attitude that Tinker (Morgan's superior) displayed toward Morgan because of his age and he admitted that he didn't know whether Morgan's termination was related in any way to his age. I respectfully submit that in view of those admissions, Cate's testimony does not lend any credence whatsoever to the jury's verdict in this case, even when coupled with the other "evidence" which the majority set forth in following paragraphs. Yet a mere reading of those portions of the transcript cited by the majority will show that Cate's testimony, as speculative and weak as it is, is the most favorable to plaintiff of that summarized and relied on by the majority.

The majority next summarized the testimony of Jake Matthews, age 62, who was the home delivery manager and Morgan's immediate supervisor at the Gazette. As the majority points out, Matthews specifically denied that Tinker had told him to force three people over the age of 40 to quit or else he would fire them and further

denied that he made any such statement to Morgan. He could not name, according to the majority, anyone under forty who had been placed on probation and, in fact, it appears that he didn't know of anyone that had been placed on probation other than him and Morgan. He specifically denied, at Tr. 748, that he had transferred "because you were afraid Mr. Tinker was going to fire you, weren't you." Matthews testimony, cited by the majority, certainly doesn't prove or tend to prove, even when given every reasonable inference, that this 44 year old man was fired because he was too old. In fact, it tends to prove just the opposite.

The testimony of Tinker is next discussed, and the majority seems to place some emphasis on the fact that he admitted that three individuals, who were over 50, of the literally hundreds of employees working at the Gazette, were transferred and replaced by younger persons. Certainly that does not show or tend to show that Morgan was fired because he was 44 years of age. Of course, because of the majority's approach, the court was not even permitted to know that there were several hundred employees at the Gazette because that wasn't part of the testimony picked out of the record by the majority as being favorable to Morgan, thus it couldn't be considered.

The majority next summarized and seemed to rely on the testimony of David Carr, a former branch manager. He "believes" that he was harassed and discriminated against and terminated by the Gazette because he had reached the ripe old age of 41. Additionally, he believed that he didn't "get the word" quite as soon as some younger employees, and that they were given longer to turn in required reports. I do not believe that reasonable minds could believe that Carr's almost paranoid *"belief"* indicates that Morgan was fired because he was 44 years of age.

In my view, the summary of the testimony of Ed Marsh reaches the heighth of unreliability and, in fact, incredibility. The majority says that he:

[S]tated that he had observed that older employees, specifically John Morgan and David Carr, were fired from the Gazette. He recalled having a conversation with another Gazette employee who told him that Morgan was fired because he was not part of the 'new wave or new movement'. Marsh could not recall who made this statement. Marsh also testified, however, that he did not recall anyone saying that age played a big part. He said that Tinker seemed to prefer to surround himself with young, inexperienced employees.

Again, so what? He observed that John Morgan and David Carr had been fired. What does that prove? Additionally, some unnamed person of the literally hundreds who worked for the Gazette allegedly told him he knew why Morgan had been fired. Marsh didn't know who it was and clearly didn't know whether it was the janitor or someone in authority.

The summarization by the majority of Morgan's testimony is nothing more than a collection of the self-serving and conclusory allegations of Morgan himself. It has little more probative value than the complaint he filed. Since the majority pointed to this testimony, along with the other summarized, to support its conclusion that reasonable jurors could have concluded as the jury did in this case, it must have believed that that testimony had importance in that respect. What that paragraph of the opinion says in respect to Morgan's testimony is that he told Davis, Tinker, and George VanWagner, general manager of the Gazette, that he believed that the Gazette was discriminating against older people, and had discriminated against him. What else would one expect Morgan to say? Additionally, he said that Tinker had ordered him to fire two individuals, aged 50 and 57, and that he "thought" it was because of their "ages, experience, and salaries." Again, since Mr. Morgan hoped to receive the large judgment that he received in this case, and an order of reinstatement, it is not surprising that he said that, but it is hardly evidence from which reasonable minds could believe that he was terminated because he was an old man of

44. When stripped to its bare essentials, he simply thought he had been discriminated against and told others of his belief. Are we going to decide cases on what the plaintiff believes or says he believes?

The only other evidence pointed to by the majority to support its conclusion is that of Joanne Campbell, and Robert Kizer. Ms. Campbell, 45, simply testified that she had applied for a zone manager's position but that it was given to a person in his early 30's whom she admitted had more experience than she did. Surely no one would contend that testimony even tends to prove anything.

Apparently the majority believes that Kizer's testimony in some way lends support to the conclusion reached, but all that he said was that he had applied for a branch manager position and didn't get it, and *assumed* that it was because of his age, because he didn't know of anyone older than himself or anywhere near his age who had been appointed branch manager.

The above is the sum total of the evidence from which the majority concluded that the motion for a judgment notwithstanding the verdict should have been denied, as it was. Although, after summarizing the testimony referred to above, the majority said that there are "additional threads of evidence which can be gleaned from the record to support a finding that age was a determining factor" it failed to point to any. Instead, after saying that, it merely stated again the same testimony which it had summarized earlier in its opinion. Saying it twice didn't give it more weight.

Even in view of the stringent requirements of *Dace*, it is my belief that the proper course is for this court to look at all of the uncontroverted evidence in the record and that evidence giving background helpful in placing Morgan's evidence in context to determine whether it was reasonable for the jury to conclude as it did. When that is done, it becomes evident that, during the period when the changes testified to in this case were taking place, the Gazette was locked in a virtual battle for survival with the Arkansas Democrat. It had just engaged in a long and expensive anti-trust suit against the Democrat. This "newspaper war" had received nationwide publicity. In fact, only six months after plaintiff's termination, and after the Gazette lost the lawsuit, this "battle" culminated when the Gazette was sold to Gannett Corporation, a nationwide newspaper chain. I mention this evidence because I believe that it is pertinent in that it undoubtedly explains, and any reasonable person would have to believe that it explains, some of the many changes that were taking place at the Gazette during that period.

John Morgan was hired by the newspaper in July of 1974, and held various positions until his termination. He apparently believes that the Gazette started discriminating against him because of his age when he was only 42. That was when he was promoted to branch manager, but he says that he didn't "see it as a promotion", although he admitted that he had "a lot more responsibility". He says he was forced to take the job.

In 1983, the Gazette, in the very middle of the competitive environment referred to above, hired John Schueler as the director of circulation. Within a reasonably short time after Schueler was placed in that position, he demoted Morgan from city circulation for poor performance, and hired Tony Tinker as his replacement. The evidence shows that Tinker was well qualified for the position, having substantial experience in both circulation and production. At that time, Morgan was given an option to resign or to continue work until his retirement vested. He became a district manager in April of 1984 and continued to work in that position until approximately six months before his termination when he was promoted to branch manager at age 44. It is significant that at that time Tinker, this man who is supposed to dislike working with older employees, hired Jake Matthews, age 62, to the position of home delivery manager. Morgan's immediate supervisor was Matthews.

Both the Arkansas Gazette and the Arkansas Democrat, its competitor in the vicious newspaper war referred to above, belonged to the Audit Bureau of Circulation (ABC), and the editor and publisher of each of the papers were required to sign a statement certifying to the accuracy of all information provided to the ABC.

In March of 1986 the Gazette learned through a letter which it received from the ABC that a 100% audit would be conducted because of the competitive nature of that newspaper market. This audit would determine and confirm the circulation of each newspaper, directly affecting advertising rates and, in other ways, would be utilized in the "war" between those two statewide newspapers. During that audit, a number of variances were found in respect to circulation figures from all over the city, but the evidence shows that it was normal to find them. When these variances were discovered, the auditors for the ABC returned the reports to Tinker who then returned them to the proper branches to correct the variances. These corrected lists were then resubmitted to the ABC.

After the ABC received these supposedly corrected route lists, Tinker was confronted by the auditors and shown several supplemental route lists with fraudulent information. All of these fraudulent returns were in respect to Morgan's branch. Morgan admitted to Tinker that he and Cates had submitted false information and that he was aware that submitting false information was a violation of the ABC audit rules. His excuse was that he had been told to do that by Matthews. That, of course, was denied by Matthews. I have little doubt, after reading the entire transcript, that one of the things that the jury tried, and was allowed to try, was whether Morgan or Matthews told the truth in this respect and whether it was, thus, "right" to fire him for these fraudulent returns.

In any event, after learning that Morgan had falsified the records and had admitted that he had done it, Tinker conducted a comprehensive investigation of the falsification that had occurred prior to making a decision to discharge plaintiff. That investigation spanned several weeks, included an investigation of Matthews, age 62, and Cates, age 56. After this complete investigation, Tinker gave Morgan the choice of resigning or being terminated. No action was taken against the two employees who had been investigated who were, as indicated, substantially older than Morgan.

Probably because Morgan strenuously objected to his termination and claimed discrimination, the Gazette asked Don Davis, age 45, who had recently been promoted to the position of circulation director, to conduct a further investigation. His investigation is detailed in his testimony beginning at Tr. 650, and after that investigation, he concluded that Morgan falsified the records, something that Morgan admitted when confronted with the facts. He concluded that the decision to terminate would stand.

Now, that is a summary of some of the additional evidence that I firmly believe should have been considered by the trial court, and should be considered by this court, in determining whether the verdict should stand. But according to the majority we are not permitted to know and certainly not permitted to consider any of that evidence. We must pretend that the jury didn't even know that Morgan admitted that he had lied to his employer about a particularly important matter, because that isn't favorable to him. Rather than considering at the very least all the uncontroverted evidence, the majority undertook a "painstaking study of the transcript as a whole" and it was only then able to "glean the limited references to age" on which it wholly relied.

Let's not forget what we have here and what we're doing here. What we have here is a man who admits that he lied both to his employer and to the Audit Bureau about circulation figures in his area, apparently in an attempt to convince his employer that he was doing a better job than he was. When the Gazette management determined that he had lied and he admitted that he had, he was terminated.

What we are doing here is telling employers that they cannot terminate employ-

ees over the age of 40 irrespective of how strong the evidence of wrongdoing by that employee is without exposing themselves to a strong probability that the terminated employee will be able to find a jury that will determine, not whether the person was terminated because of his age, but a myriad of other "fairness" issues, resulting in the expenditure of astronomical sums by that employer because it made an employment decision, and, because of the way we interpret *Dace* in this case and this Circuit's decisions in respect to the granting of motions for new trial, there is nothing that this court or the trial court can do about it.

In this respect the majority opinion affirms judgment in favor of Morgan in the amount of $35,642.40 for back wages to the point of the trial, and orders him reinstated to his former position. However, that is by no means, the extent of the award that will undoubtedly be made to plaintiff in this case.

The majority also remanded the case to the trial court with directions that Morgan be compensated "for any additional damages sustained during pendency of this litigation and until reinstatement." It also ordered that reasonable costs and attorneys fees be awarded. The case was tried in March of 1988 and judgment was entered on the third day of May, 1988. Thus, plaintiff will receive substantial additional back wages for the period between the date of the trial and reinstatement. Additionally, the file reflects that the trial court awarded Morgan attorney's fees and costs exceeding $70,000. The total award will certainly greatly exceed $100,000 and will probably be closer to $200,000, and that doesn't take into account the Gazette's attorney fees and costs expended in defending this case.

So, what we have here, on one side of the "scales of justice", is an employer which made a management decision to terminate an employee that admittedly lied to it and to the Audit Bureau in a particularly egregious fashion, at a time when that falsification was particularly harmful to the employer because of the highly charged competitive atmosphere. On the other side of the "scales" we have vaporous and vapid "limited references to age" which the majority gleaned from the record "only by painstaking study of the transcript". Like fog, when one attempts to reach out and touch and examine that "evidence" it simply isn't there, and the majority's interpretation of *Dace* prevents us from looking past the fog to see what's really there.

I am convinced that, when any normal and unbiased juror views those scales, and understands what the real issue is, it is unreasonable for that juror to say that plaintiff has proved that the Gazette terminated him because he was 44 years of age.

Since that is true, I am equally convinced that this courts errs in affirming the denial of the motion for judgment notwithstanding the verdict and, in doing so, tells the world that it is extremely dangerous and extremely expensive for any employer to terminate an employee, even one barely over the ADEA's threshold age of 40 years, irrespective of what the employee has done to deserve being terminated.

From my view from my "every day job" as a trial judge, it is my firm belief, whether right or wrong, and a belief that I state most respectfully, that decisions such as this one and other decisions of this court in reviewing motions for new trial and motions for judgment notwithstanding the verdict have sent clear signals to trial judges that they are at least foolhardy to even think about granting these motions when filed. The message seems to be that reasonable jurors must have been able to conclude as they did simply because they did, and that trial judges should deny all motions for judgment notwithstanding the verdict and motions for a new trial and, if they don't, they will get the case back so they can do it "right". Such an attitude provides no vehicle for rectifying clear miscarriages of justice. If that is "the law" Rules 50 and 59 of the Federal Rules of Civil Procedure have been read out of the rules and should be stricken from the books.

I respectfully dissent from the decision of the majority, and would reverse and

remand this matter to the trial court with directions that the motion for judgment notwithstanding the verdict be granted.