**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2882

_____

| | | |
|---|---|---|
| Robert L. Mason, Jr., | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Arkansas. |
| | * | |
| International Paper Company, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: March 24, 1997
Filed: June 24, 1997

_____

Before McMILLIAN, BRIGHT and LOKEN, Circuit Judges.

_____

PER CURIAM.

Appellant Robert Mason, Jr. sued his former employer, International Paper Company (IPC), alleging that IPC discriminated against him on the basis of race, thereby violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e(5), and 42 U.S.C. § 1981. The district court dismissed the Title VII claim as time barred. After a bench trial, the court concluded that IPC had legitimate economic reasons for its actions and, accordingly, ruled in favor of IPC on Mason's § 1981 claim. Mason appeals the decision regarding the § 1981 claim, but does not challenge the court's ruling with regard to his Title VII claim. He contends that the district court's factual findings were clearly erroneous. We affirm.

# I. BACKGROUND

IPC employed Mason, a black male, from 1974 until 1993. Tr. at 540. IPC hired Mason as an accountant for its paper mill in Camden, Arkansas, and promoted him to the position of Cost Analyst in 1978 and then to Senior Cost Analyst in 1983. Id. at 23. From 1974 to 1986, Mason worked on the cost side of the mill's accounting department. Id. at 540.

In 1986, IPC began a cross-training program and moved Mason from the cost side to the general side of the accounting department. Id. at 44-45. In exchange, IPC moved James Harvey, a white male, from the general side to the cost side of the department. Id. at 222. From 1989 through 1992, Mason received two "meets expectations" and two "needs improvement" ratings on his performance evaluations. Jt. App. at 163-85; see also id. at 333. Neither Mason nor Harvey were reassigned or promoted during this time. Tr. at 243-44.

In 1993, however, IPC implemented a company-wide centralization of accounting functions. This centralization process resulted in the elimination of Mason's position, as well as four clerical positions filled by white employees, in the mill's accounting department. Id. at 318, 456. Instead of firing Mason, his superiors decided to reassign him to a newly created position in the mill's purchasing and stores department. Id. at 62-63. Mason's reassignment did not affect his salary or job title. Id. at 334. Mason's position in the accounting department remained unfilled at the time of trial. See Appellee's App. at 1.

Upon learning of his reassignment, Mason requested a transfer to a different IPC facility. Tr. at 66. The head of the mill's human resources department informed Mason that his recent "needs improvement" ratings virtually precluded a transfer and recommended that Mason accept the reassignment, improve his ratings and then request a transfer. See id. at 340-45. In addition, Mason was instructed to submit an internal resume if he wished to pursue

a transfer. Id. at 458. Mason did not do so. Id. at 73.

Mason reported to his new job in the purchasing and stores department in July, 1993. In September, 1993, however, IPC instituted a reduction in force at the mill facility requiring the elimination of nine positions. Id. at 460-61. Unlike the prior centralization of accounting functions, the downsizing of the mill prevented Mason's superiors from merely transferring employees from one department to another. Mason's superiors decided to fire him, another black employee and seven white employees. Id. at 461. IPC chose which employees to fire by identifying which positions were not essential to the success of the mill. Id. at 461-62. In addition, Mason's supervisors regarded his work as less than satisfactory compared to other employees. Id.

Mason sued IPC claiming that it violated Title VII and 42 U.S.C. § 1981 by discriminating against him on the basis of race (1) when it moved him from the cost side of the accounting department to the general side, (2) when it transferred him to the purchasing and stores department and, (3) when it fired him. The district court dismissed Mason's Title VII claim as time barred, Tr. at 4, and ruled that the statute of limitations restricted his § 1981 claim to events occurring after January 24, 1992. Id. at 17-19. Mason does not challenge those decisions on appeal. After a three-day bench trial, the court ruled in favor of IPC because it had legitimate, nondiscriminatory reasons for its decisions. Id. at 542-43; see also Jt. App. at 7 (Dist. Ct. Order dated May 31, 1996). Mason appeals.

## II.   DISCUSSION

On appeal, Mason argues that the district court's determinations regarding IPC's motivations for moving Mason from the cost side to the general side of the accounting department in 1987, for transferring Mason to the purchasing and stores department,

and for firing him were clearly erroneous. In addition, he asserts that Exhibit 42, a racist letter found in a copy machine at the mill, demonstrated racial animus by Mason's superiors.

According to the burden-shifting analysis explained in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff in an employment discrimination case first bears the burden of producing a prima facie case of racial discrimination. Id. at 802. If the plaintiff meets this initial burden, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. Id. Finally, the burden shifts back again to the plaintiff to demonstrate that the defendant's reason is merely a pretext for racial animus. Id. at 804-05. On appeal, however, "following a full trial in an employment discrimination case, '[t]his court will not assess the adequacy of a party's showing at any particular stage of the McDonnell Douglas analysis.'" Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1101 (8th Cir. 1996) (quoting Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir. 1990)). Instead, whether employment discrimination occurred is a finding of fact, Anderson v. City of Bessemer, 470 U.S. 564, 566 (1973), which this court sets aside only if it is clearly erroneous. See Benjamin v. Aluminum Co. of America, 921 F.2d 170, 172 (8th Cir. 1990).

In this case, the district court concluded that IPC offered sufficient evidence of legitimate, nondiscriminatory reasons for its actions. Tr. at 542. Assuming arguendo that Mason could challenge his employer's decision to move him from the cost side to the general side of the accounting department,[1] evidence at trial demonstrated that the move was part of an economically motivated cross-training program. In addition, evidence of IPC's similar treatment of a white employee participating in the same cross-training program supports the district court's conclusion.

---

[1]This transfer occurred in 1987 and, therefore, falls outside the statute of limitation's scope of relevant conduct on which Mason can base his claim.

-4-

IPC also offered evidence that the company-wide centralization of accounting functions, which resulted in the elimination of Mason's position in the accounting department, was economically motivated. Despite Mason's protestations to the contrary, his position in the accounting department remained unfilled at the time of trial. IPC offered testimony that it eliminated Mason's position because other similarly situated employees performed their jobs better.[2] Furthermore, Mason's superiors' actions contradict his claim of racial animus because they created a new position for Mason in another department in order to prevent him from losing his job.

Finally, IPC offered evidence of nondiscriminatory reasons for firing him. IPC fired Mason as part of an effort to eliminate nine positions at the mill. Evidence showed that his superiors eliminated Mason's newly created position in the purchasing and stores department because they considered the position inessential to the success of the mill and regarded Mason's performance as less than satisfactory. The district court also stated that Mason demonstrated a "bad attitude" about his newly created position. Tr. at 543.

The only evidence of racial animus consisted of a photocopy of a racist speech found in a copy machine at the mill. Jt. App. at 137-38. The photocopy attributes the speech, which discusses methods for controlling black slaves, to Willie Lynch in 1712. Id. Mason claims he found the speech at the copy machine as well as a handwritten note to his superior. Id. at 136. Mason argues that the note and his superior's access to the copy machine demonstrate that IPC's treatment of him was racially motivated.

---

[2]IPC compared Mason's performance to four other similarly situated employees in the accounting department, including Harvey who also participated in the cross-training program. See Jt. App. at 333. Three of those employees were white and one was black.

Mason, however, failed to offer any evidence that his superiors knew about the note or the speech.  See Tr. at 129-30.  Furthermore, testimony from other black employees refuted Mason's claim that race affected IPC's employment decisions.  See, e.g., id. at 361-62; id. at 534.  Although the letter's presence at the mill troubled the district court, it believed that the letter failed to demonstrate that IPC's actions were racially motivated.  Jt. App. at 7 (Dist. Ct. Order dated May 31, 1996).  According to the record, the district court's decision was not clearly erroneous.

Although Mason contests the factual and credibility determinations made by the district court, he fails to demonstrate that these determinations were clearly erroneous.

## III.    CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-